Judge Wendell GRIFFEN *v.* ARKANSAS JUDICIAL
DISCIPLINE & DISABILITY COMMISSION

06-1392                                                  247 S.W.3d 816

Supreme Court of Arkansas
Opinion delivered January 25, 2007

Petitioner *Judge Wendell Griffen*, pro se.

*Frank J. Wills, III*, for respondent.

R OBERT L. BROWN, Justice. Judge Wendell Griffen has filed a petition for writ of *mandamus* to compel Respondent Arkansas Judicial Discipline and Disability Commission (Judicial Commission) to admit the public and news media to his formal probable-cause meeting, formerly scheduled for January 19, 2007.[1] James Badami, Executive Director of the Judicial Commission, refused Judge Griffen's request that the meeting be open to the public. We stayed the formal meeting by *per curiam* order issued on January 12, 2007, and stated that an opinion would follow.

On February 15, 2006, Mr. Badami prepared a Statement of Allegations against Judge Griffen in Cases No. 05-328 and No. 05-356, alleging violations of Canons 1, 2, 4, and 5 of the Arkansas Code of Judicial Conduct based on Judge Griffen's public remarks criticizing the federal government's response to Hurricane Katrina as well as President George W. Bush's nomination of John Roberts for chief justice of the U.S. Supreme Court. Violations were also alleged based on Judge Griffen's public support of a proposed ballot measure to increase Arkansas' minimum wage. Judge Griffen answered the Statement of Allegations and denied that he had engaged in any conduct prohibited by the judicial canons. He further asserted that his comments were protected by the freedom-of-speech and free-exercise-of-religious-expression clauses of the First Amendment to the United States Constitution and by Article 2, Section 6 of the Arkansas Constitution. In his answer, Judge Griffen waived any confidentiality pertaining to pleadings, hearings, reports, and other materials related to the matter and requested that they all be open for public inspection.

The Judicial Commission scheduled a meeting for September 15, 2006, to decide whether to dismiss the Statement of Allegations or to proceed with a formal probable-cause meeting. Judge Griffen once again waived any confidentiality in the matter

---

[1] Judge Griffen refers to a probable-cause "hearing" in his petition and brief, but the Rules of Procedure refer to it as a "formal meeting." Ark. Jud. Disc. & Disabl. Comm'n R. 9C (2006). For convenience, we will refer to the proceeding as a "formal meeting" though Amendment 66 indicates that Judge Griffen is correct, as discussed later in this opinion.

and requested that the meeting be open to the public and the news media. Mr. Badami refused, and Judge Griffen filed a petition for writ of *mandamus* with this court to compel the Judicial Commission to open the meeting. This court ultimately denied the petition by *per curiam* order on September 14, 2006. At the ensuing meeting on September 15, 2006, the Judicial Commission voted to proceed with a formal probable-cause meeting.

Mr. Badami next amended the Statement of Allegations against Judge Griffen to include incidents where Judge Griffen had publicly criticized the war in Iraq as well as those who had expressed anti-immigration and anti-homosexual sentiments. A probable-cause meeting on the Second Amended Statement of Allegations was first scheduled for November 17, 2006, and then rescheduled for January 19, 2007. At this formal meeting, the Judicial Commission was to decide whether there was probable cause to proceed to a formal disciplinary hearing and, if not, whether to admonish Judge Griffen or require an "adjustment" in his conduct. Once again, Badami refused to open the formal probable-cause meeting to the public and the news media, which led to Judge Griffen's pending petition for *mandamus* relief. The January 19, 2007 formal meeting was stayed by this court, pending our decision.

Judge Griffen raises several legal justifications in support of his petition to compel the opening of the probable-cause meeting: (1) violation of the Arkansas Freedom of Information Act, (2) violation of procedural due process, (3) violation of the First Amendment, and (4) waiver of all confidentiality. We conclude that Judge Griffen is correct that under the facts of this case, where he has waived confidentiality, and where judicial discipline may be imposed, the formal probable-cause meeting should be open to the public and the news media.

We note, as an initial matter, that Amendment 66 to the Arkansas Constitution provides: "[i]f, after notice and hearing, the Commission by majority vote of the membership determines that grounds exist for the discipline of a judge or justice, it may reprimand or censure the judge or justice, who may appeal to the supreme court." Ark. Const. amend. 66(c).[2] We further note that a state statute expressly provides that all Judicial Commission

---

[2] Though Amendment 66 speaks in terms of "reprimand or censure," our Rules of Procedure use those terms only once. *See* Ark. Jud. Disc. & Disab. Comm'n R. 11G(5)

"proceedings held prior to a determination of probable cause and the filing of formal charges shall be confidential." Ark. Code Ann. § 16-10-404(b)(2) (Repl. 1999).

We observe, in addition to our constitution and state statute, that the Rules of Procedure of the Judicial Discipline Commission, which were adopted by this court, specifically read that "[i]f the Commission finds it necessary to file formal charges against a judge and to proceed to a hearing, the charges and the hearing shall be open to the public as shall the records of formal proceedings." Ark. Jud. Disc. & Disab. Comm'n R. 7B (2006). Otherwise, the Rules of Procedure are silent on whether the formal meeting of the Judicial Commission to determine whether probable cause exists to file formal charges shall be open to the public and news media. *See* Ark. Jud. Disc. & Disab. Comm'n R. 9C (2006). Rule 9C does, however, provide that a "verbatim record" of the probable-cause meeting shall be made. *Id.* The supreme court may bring up for review by *certiorari* any action taken upon any complaint filed with the Judicial Commission. Ark. Jud. Disc. & Disab. Comm'n R. 12F (2006).

Other states, operating under similar judicial disciplinary rules as our own, have stressed the importance of confidentiality in judicial disciplinary proceedings, especially before formal charges are filed against the judge. *See, e.g., First Amendment Coalition v. Judicial Inquiry & Review Bd.*, 784 F.2d 467 (3rd Cir. 1986) (state constitutional provision permitting public access to records of the judicial inquiry and review board only if board recommends that state supreme court discipline a judge is not unconstitutional); *Bradbury v. Idaho Judicial Council*, 28 P.3d 1006 (Idaho 2001) (confidentiality in judicial disciplinary proceedings does not infringe upon a fundamental right and is rationally related to the state's legitimate interests); *In re Inquiry Concerning Stigler*, 607 N.W.2d 699 (Iowa 2000) (judge failed to establish how statute providing that all hearings of the judicial disciplinary commission be confidential denied him due process of law); *In re Deming*, 736 P.2d 639 (Wash. 1987) (confidentiality is mandated during investigatory stage of proceeding; once probable cause is determined and formal complaint is filed, judicial discipline commission has discretion in disclosing information and holding public hearings);

---

(2006). Otherwise, the discipline referred to in the Rules is "admonition or required adjustment" in the judge's conduct. *See* Ark. Jud. Disc. & Disab. Comm'n R. 7A and R. 9E(2) (2006).

*State ex rel. Lynch v. Dancey*, 238 N.W.2d 81 (Wis. 1976) (statute requiring governmental bodies to hold open meetings did not apply to judicial commission; judicial commission rules of procedure that required public hearings after formal charges had been filed pre-empted the application of the open meetings statute); *McCartney v. Comm'n on Judicial Qualifications*, 526 P.2d 268 (Cal. 1974), *overruled on other grounds by Spruance v. Comm'n on Judicial Qualifications*, 532 P.2d 1209 (Cal. 1975) (because judicial commission's proceedings were neither criminal nor before a "court of justice," there was no impropriety in commission's refusal to hold public hearings).

In 1990, this court underscored the policy reasons for requiring confidentiality of Judicial Commission meetings held prior to the filing of formal charges. *See In re Rules 7 and 9 of the Rules of Procedure of the Arkansas Judicial Discipline & Disability Comm'n*, 302 Ark. App'x 633, 790 S.W.2d 143 (1990) *(per curiam)*. In that order, we said:

> When adopting and implementing laws and rules that provide for a judicial discipline system, we are confronted with the issue as to when in the process or proceedings does the right to constitutional access attach. Every state in the Union recognizes that some confidentiality is necessary, and from our research, we have found that all states, except the State of Washington, provide for disclosure in all judicial discipline cases only after probable cause has been determined *and* some type of formal hearing or charge has been completed or filed. *See* J. Shaman and Y. Beque, *Silence Isn't Always Golden*, 58 Temp. L.Q. 755, 756 (1985).[FN1] The Supreme Court in *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 998 S.Ct. 1535, 56 L.Ed.2d 1 (1978), set out the three reasons or functions for confidentiality in these matters. They are listed as follows:
>
>> [FN1:] This article includes a list of states and notes when their respective law provides for confidentiality to cease. We should mention that these points of access have changed in some of the listed states since the article was written, and we particularly note Washington State is one of the changes.
>
>> 1. To protect complainants and witnesses from possible recrimination until the validity of the complaint has been ascertained;
>
>> 2. To protect a judge's reputation from the adverse publicity which might flow from frivolous complaints;

3. To maintain confidence in the judicial system by preventing the premature disclosure of a complaint before the commission has determined that the charge is well-founded. *See also First Amendment Coalition v. Judicial Inquiry & Review,* 784 F.2d 467 (3rd Cir. 1986); W. Braithwaite, *Who Judges the Judges?,* 161-162 (1971); Buckley, *The Commission on Judicial Qualification: An Attempt to Deal with Judicial Misconduct,* 3 U. San Fran.L.Rev. 244 (1969).

302 Ark. App'x at 634, 790 S.W.2d at 144.

Our Rules of Procedure, however, contain an obvious anomaly. The determination of whether to file charges against the judge is not the only result of a formal probable-cause meeting. The Judicial Commission may decide not to proceed to formal charges, but, instead, to admonish the judge publicly or require some other "adjustment" in the judge's conduct as a discipline:

A. Any action taken by the Commission after investigation of a judge shall be communicated to the judge by letter *which shall become public information.* If the allegations leading to the investigation have proven to be groundless, the letter to the judge shall so state. [See Rule 8.B and Rule 9.E.(1).] If the Commission decides not to proceed to formal charges but to admonish the judge, to recommend a change in conduct, or to impose conditions upon future conduct, such as obtaining treatment or counseling, the letter shall set forth the facts leading to the admonition or required adjustment.

Ark. Jud. Disc. & Disab. Comm'n R. 7A (2006) (emphasis added). *See also* Ark. Jud. Disc. & Disab. Comm'n R. 9E(2) (2006). Thus, a public sanction of the judge may be the end result of the probable-cause meeting.

We turn then to the pivotal point in this case, and that is Judge Griffen's waiver in writing of all confidentiality related to the formal probable-cause meeting. Stated differently, Judge Griffen has requested that his probable-cause meeting be open to the public and news media. The Rules of Procedure do provide that a judge may waive confidentiality in writing at any stage of the proceedings for "[i]nvestigatory records, files, and reports of the Commission." *See* Ark. Jud. Disc. & Disab. Comm'n R. 7C (2006). The Rules of Procedure, however, do not expressly address a judge's waiver of confidentiality with regard to the probable-cause meeting. Further, to reiterate in part, our 1990 *per curiam* order quoted above gives the reasons behind confidentiality,

which are not only to protect the judge's reputation, but are also to protect complainants and witnesses before the Judicial Commission and to protect premature disclosure of a judicial-discipline complaint. In short, it is obvious from our *per curiam* that confidentiality does not flow only to protect a judge's reputation. There are other interests to be protected, which can best be described as the interests of the Judicial Commission.

Having said that, there are several points in this case that disturb us about protecting the Judicial Commission's interest in confidentiality as opposed to the judge's. The first point is that at oral argument, counsel for the Judicial Commission could not give this court, though asked several times, a specific reason for closing the formal probable-cause meeting. We recognize that revealing the names of complainants or witnesses or identifying evidence at oral argument may defeat the purpose of confidentiality, but counsel did not even indicate that in this particular case there were, in general, unnamed complainants, witnesses, or other evidence that needed to be shielded from public view. He merely argued that the law provided for confidentiality and that a private meeting was the Judicial Commission's "obligation" under the law.

There is a second reason for our concern and that is the fact that a non-public, probable-cause meeting can result in a public admonishment or other required adjustment for the judge's conduct. This is troubling to this court in that (1) admonishing a judge publicly for conduct is a serious matter, as Judge Griffen correctly points out, and (2) a distinct majority of the states providing for a confidential probable-cause meeting do not provide a public discipline like admonishment or other required adjustment of conduct following that meeting, particularly if the judge requests a public hearing.[3] On the contrary, the probable-cause meeting in those states is purely for the purpose of deciding whether to file

---

[3] Our research, though not exhaustive, shows that the following states allow for informal, private discipline or correction without a formal hearing but that public discipline only comes after a public, formal disciplinary hearing: Alaska, Indiana, Kansas, Louisiana, Maryland, Mississippi, Nevada, Rhode Island, South Carolina, and Wisconsin. Other states provide for discipline only after a public, formal disciplinary hearing: Alabama, Illinois, Kentucky, Michigan, New Hampshire, Oregon, Pennsylvania, Tennessee, and Texas. Still, other states appear to allow for discipline, either public or private, before a public hearing is held, if agreed to or not objected to by the judge. However, the judge may object to the discipline and demand a public, formal disciplinary hearing. These states include Arizona, California, Maine, North Carolina, Washington, and West Virginia. A few states do provide

formal charges and not for announcing a public discipline of the judge. Making an admonishment or other required adjustment of the judge's conduct a potential result of a private probable-cause meeting adds a new dimension to the proceeding and appears to this court to militate in favor of openness, should the judge desire it. Indeed, it is this court's interpretation of Amendment 66 that before a judge can be reprimanded or censured, he or she must be provided with notice and a *hearing*. Ark. Const. amend. 66. An admonition is synonymous with a reprimand or censure, according to *Black's Law Dictionary*. *See Black's Law Dictionary* 52, 1329 (8th ed. 2004). And requiring a "hearing" indicates an open proceeding.

Our third concern is that Judge Griffen had a formal probable-cause meeting that the Judicial Commission opened to the public in 2002, according to Judge Griffen's brief in the instant petition. This fact is not refuted by the Judicial Commission. If that was in fact the case, why close the probable-cause meeting in the case before us? The Judicial Commission's interpretation of its own Rules of Procedure appears inconsistent. Again, no good reason has been presented to this court by the Judicial Commission for this inconsistency or for closing the formal probable-cause meeting at this juncture when it did not do so previously.

The Judicial Commission's Rules of Procedure also provide that the records of formal proceedings shall be made public if formal charges are filed. *See* Ark. Jud. Disc. & Disab. Comm'n R. 7B. This begs the question of why close the formal probable-cause meeting, if a record of that meeting can be made public?

■ We conclude that Judge Griffen's petition for writ of *mandamus* must be granted, particularly in light of the fact that Amendment 66 contemplates a hearing before disciplining a judge by reprimand or censure. We further conclude that where a public admonishment or other required adjustment of the judge's conduct may be the result and where a judge has waived confidentiality without any countervailing reason to close the formal meeting presented by the Judicial Commission, the formal probable-cause meeting must be open. We emphasize that while we are granting Judge Griffen's *mandamus* petition to open the probable-cause hearing, we do so only for the reasons stated herein and not to in any way disparage our 1990 *per curiam*. Had the Judicial

---

that all disciplinary hearings are closed to the public: Delaware, Idaho, Missouri, New Mexico, New York, South Dakota, Utah, Virginia, and Wyoming.

Commission specified a legitimate reason for closing the meeting, rather than simply announcing that state law and our regulations obligate it to do so, no doubt this court would have entertained that reason. But none was provided.

■ As a final point, we give the Judicial Commission's arguments of *res judicata* and the availability of an adequate remedy through a declaratory judgment and appeal little credence. The Judicial Commission advances the defense that because this court denied Judge Griffen's petition for *mandamus* to open the meeting to determine whether to proceed to a formal probable-cause meeting, that decides the question of whether to open the formal probable-cause meeting itself. Not so. The initial investigatory meeting and the formal probable-cause meeting are two separate stages of the process with distinct ramifications. As already discussed, an outgrowth of the formal probable-cause meeting can be public admonishment or some other required adjustment in the judge's conduct.

Nor do we view a declaratory judgment and appeal as an alternative, adequate remedy for Judge Griffen's plight. Judicial discipline and the procedures defining that process are clearly *sui generis* and unlike your typical administrative action that first must be reviewed in circuit court. *See Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999). The structure contemplated in Amendment 66 to the Arkansas Constitution and our Rules of Procedure is review of Judicial Commission actions by this court by appeal or *certiorari*. However, *mandamus* is a clear remedy to compel an action by a public body to enforce an established right, where a violation of state law is clear and not discretionary. *Arkansas Democrat-Gazette v. Zimmerman*, 341 Ark. 771, 20 S.W.3d 301 (2000). Our reading of Amendment 66 is that notice and *a hearing* are required for any public reprimand or censure of a judge, which would include a public admonishment. A hearing is more than a private meeting, and, in this context, must be an open proceeding. We conclude that matters concerning disciplinary procedure that require immediate attention, such as closing a meeting that may result in a public sanction, are appropriately brought to this court by a petition for writ of *mandamus*.

Because we decide this case on the basis of Amendment 66, waiver, and the judge's right to an open hearing when public discipline might be the result, we need not address the Arkansas Freedom of Information Act, procedural due process, the First

Amendment, or the right of the public and news media to open the hearing. There appears, though, to be a dire need to clarify our Rules of Procedure in connection with the matters raised in this case. We call on the Judicial Commission to present this court with proposed amendments to accomplish this task.

Petition granted.

SPECIAL JUSTICES MITCHELL and PERKINS join.

CORBIN and DANIELSON, JJ., not participating.