*In the Matter of Judge Pamela J. White*
Misc. No. 5, September Term 2016


**Right of Appeal – Origin, Nature, and Scope.**  The right to take an appeal is generally defined by statute.  Neither the Maryland Constitution, nor any statute, including the statute that authorizes the Court of Appeals to conduct appellate review by writ of *certiorari*, provides for an appeal of a public reprimand issued by the Maryland Commission on Judicial Disabilities.  Maryland Constitution, Article IV, §4B; Maryland Code, Courts & Judicial Proceedings Article, §12-101 *et seq.*

**Judges − Removal or Discipline − Reprimand − Proceedings and Review – Mandamus.**  A judge's effort to obtain review by the Court of Appeals of proceedings before the Commission on Judicial Disabilities that resulted in a public reprimand would be treated as a petition for a common law writ of mandamus insofar as it claimed that the proceedings before the Commission did not comply with the procedural due process provided in the Maryland Constitution and Maryland Rules.

Commission on Judicial Disabilities
Case No. CJD2014-114
Argument: November 4, 2016

IN THE COURT OF APPEALS
OF MARYLAND

Misc. No. 5

September Term 2016

---

IN THE MATTER OF
JUDGE PAMELA J. WHITE

---

Barbera, C.J.,
Greene
Adkins
McDonald
Hotten
Getty,
Harrell, Glenn T., Jr.
(Senior Judge,
Specially Assigned),

JJ.

---

Per Curiam Opinion

---

Filed: February 22, 2017

In this case, we must decide – initially – whether there is any mechanism for this Court to review the fundamental fairness of a proceeding conducted by the Commission on Judicial Disabilities ("Commission") when the Commission disciplines a judge in the sole manner in which the Constitution authorizes it to do without referring the matter to this Court. We hold that there is such a mechanism – the common law writ of mandamus. Our review in this particular case awaits the provision by the Commission of the record of its proceedings.

# I

# Background

## A. *Discipline or Removal of Judges*

The State Constitution provides a special process for the discipline, removal, or involuntary retirement of a judge who commits misconduct or who is found to suffer from a disability. Maryland Constitution, Article IV, §§4A-4B.[1] In particular, the Constitution creates the Commission and empowers it to undertake investigations and conduct hearings concerning complaints about judges. *Id.*, §4B(a)(1). At the conclusion of an investigation and any hearing, the Commission may "issue a reprimand" to a judge or "recommend to

---

[1] This process is in addition to other procedures for removing a judge set forth in the Constitution – by impeachment and conviction in the General Assembly, by the Governor as a result of certain convictions in court, or "on the address of the General Assembly." *See* Maryland Constitution, Article III, §26; Article IV, §4.

the Court of Appeals the removal, censure, or other appropriate disciplining of a judge or, in an appropriate case, retirement." *Id.*, §4B(a)(2).[2]

The General Assembly has codified and elaborated in statute some of the powers conferred on the Commission by the Constitution for its investigations and hearings. Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §13-401 *et seq.* In particular, the statute provides for the issuance and enforcement of subpoenas, service of process, administration of oaths or affirmations by witnesses, and grants of immunity to witnesses. *Id.*

The Constitution delegates to the Court of Appeals the task of prescribing the rules that govern the Commission's investigations and proceedings. Maryland Constitution, Article IV, §4B(a)(5). The Constitution further directs that the proceedings before the Commission are confidential and privileged, except as provided by rule or order of the Court of Appeals. *Id.*, §4B(a)(3). However, the record of Commission proceedings and any proceeding filed in the Court of Appeals loses its confidential character. *Id.*

---

[2] Discipline may be imposed for "misconduct in office," "persistent failure to perform the duties of the office," or "conduct prejudicial to the proper administration of justice." Maryland Constitution, Article IV, §4B(b)(1). A judge may be retired if the judge has a disability likely to become permanent that "seriously interferes with the performance of the judge's duties." *Id.*

A judge retired as a result of a Commission proceeding has "the rights and privileges prescribed by law for other retired judges." Maryland Constitution, Article IV, §4B(b)(3). A judge who is removed from office – and the judge's surviving spouse – have only the rights and privileges as specified in the order of removal. Maryland Constitution, Article IV, §4B(b)(2).

2

Pursuant to the Constitution, this Court has adopted rules governing the Commission's investigations, hearings, and other proceedings. Those rules are currently codified in Maryland Rule 18-401 *et seq.*[3] Pertinent to this case, those rules define "sanctionable conduct" – *i.e.*, conduct for which a judge may be disciplined or removed. Maryland Rule 18-401(k).[4] Upon receiving a complaint alleging such misconduct by a judge, the Commission's Investigative Counsel may conduct a preliminary investigation. Maryland Rule 18-404. The Judicial Inquiry Board, also created by the rules, monitors the

---

[3] At the time the investigation in this case commenced and during most of the Commission proceedings, those rules were codified at Maryland Rule 16-801 *et seq.* During the pendency of this case, the rules were recodified in the current form effective July 1, 2016. Rules Order (June 6, 2016), see <http://mdcourts.gov/rules/rodocs/178troparts1x2x3.pdf>. Unless otherwise noted, in this opinion we will refer to the rules by their current codification.

[4] That phrase is defined as follows:

(k) **Sanctionable conduct.** (1) "Sanctionable conduct" means misconduct while in office, the persistent failure by a judge to perform the duties of the judge's office, or conduct prejudicial to the proper administration of justice. A judge's violation of any of the provisions of the Maryland Code of Judicial Conduct promulgated by Title 18, Chapter 100 may constitute sanctionable conduct.

(2)    Unless the conduct is occasioned by fraud or corrupt motive or raises a question as to the judge's fitness for office, "sanctionable conduct" does not include:

(A)    making an erroneous finding of fact, reaching an incorrect legal conclusion, or misapplying the law; or

(B)    failure to decide matters in a timely fashion unless such failure is habitual.

Maryland Rule 18-401(k).

investigation, receives a report from the Investigative Counsel, and makes a recommendation to the Commission about what, if any, further action to take on a complaint. Maryland Rules 18-403, 18-404. If the matter is not resolved at an earlier stage of the investigation or during the Judicial Inquiry Board process, and if the Commission finds probable cause to believe that the judge has committed sanctionable conduct, the Commission may direct the Investigative Counsel to file charges against the judge with the Commission. Maryland Rule 18-407(a). Those charges, and the judge's response to them, become the subject of an evidentiary hearing before the Commission. *Id.*

The rules provide a judge accused of misconduct with various procedural rights in connection with the Commission's hearing on the charges. Maryland Rule 18-407(b)-(i). Among other things, the rules provide for notice to the judge of the charges and allow the judge to submit a written response. Maryland Rule 18-407(b)-(c). The judge has a right to be represented by counsel, to have subpoenas issued for testimony by witnesses and the production of evidence, to examine the Commission record, and to cross-examine adverse witnesses. Maryland Rule 18-407(f). The pre-hearing exchange of information between the judge and Investigative Counsel is governed by the discovery rules applicable to civil actions in the circuit courts; the Chair of the Commission is authorized to carry out the function of a circuit court judge in limiting discovery, issuing protective orders, and otherwise resolving discovery disputes. Maryland Rule 18-407(g)(3). The hearing before the Commission on the charges is to be conducted in accordance with the rules of evidence and is to be stenographically recorded. Maryland Rule 18-407(i).

4

The Commission is to make findings of fact under a clear and convincing standard of proof and either dismiss the charges, reprimand the judge, or refer the matter to the Court of Appeals for other discipline. Maryland Rule 18-407(j). If the matter is referred to this Court, the Commission is to create a record of its proceedings, including a transcript. Maryland Rule 18-407(k).

**B.      *Proceeding Before the Commission Concerning Judge White***

Although we have not yet been provided with the Commission's record in this matter, we understand from the parties' submissions and selected documents posted on the Commission's website[5] that the following description of prior proceedings is either undisputed or is set forth in materials that may be judicially noticed.

1.      Alleged Judicial Misconduct in *Joyner v. Veolia Transportation Services*

This case traces its genesis to several hearings during 2014 in a civil action in the Circuit Court for Baltimore City over which Judge Pamela J. White presided. *Louise V. Joyner v. Veolia Transportation Servs. Inc., et al*. Case No. 24C14000589 (Baltimore City Circuit Court). Rickey Nelson Jones represented the plaintiff in that matter. Although not pertinent to our disposition of the legal question before us, we summarize briefly the proceedings in that litigation that resulted in the complaint against Judge White, as found by the Commission in its order in the case before us.

---

[5] *See* <http://www.mdcourts.gov/cjd/publications.html>.

5

*Hearing on Motion to Dismiss Punitive Damages Claim – May 5, 2014*

The *Joyner* matter came before Judge White on May 5, 2014, for a hearing on the defendant's motion to dismiss the plaintiff's claim for punitive damages. During Mr. Jones' argument on behalf of the plaintiff, Judge White, in a raised voice, stated to Mr. Jones, "[a]re you telling me with a straight face, as an officer of the court, that the actions of an insurance adjuster from another company [, *i.e.*, a company that was not an insurer of the defendant] should be attributed to defendant Veolia?" Mr. Jones answered in the affirmative. Judge White then asked, "[d]o you have any legal authority that gives you the chutzpah[6] to claim punitive damages in a negligence case for actions by an adjuster not employed by Veolia that would have allowed me to attribute ill will to Veolia?" The Commission later found that, during this exchange, "Judge White yelled and treated [Mr.] Jones in a rude, disrespectful, and unprofessional manner."

*Pretrial Conference; Show Cause Order for Plaintiff's Failure to Attend*

During 2014, Judge White was also in charge of the Circuit Court's Civil Alternative Dispute Resolution ("ADR") Program. On September 17, 2014, a pretrial conference was held in the *Joyner* matter in accordance with the ADR Program. Jeff Trueman, Deputy Director of the ADR Program, and Senior Judge Paul Alpert conducted the pretrial conference. Counsel for defendant Veolia, a corporate representative of

---

[6] "Chutzpah" is a Yiddish word that denotes gall, brazen nerve, or arrogance. For a fuller description, *see Corapcioglu v. Roosevelt*, 170 Md. App. 572, 611 n.15 (2006).

defendant Veolia, and Mr. Jones attended. Mr. Jones' client, Ms. Joyner, did not attend the pretrial conference – a violation of the Circuit Court's scheduling order.

On October 9, 2014, Judge White issued a show cause order in the *Joyner* matter. The order required that Ms. Joyner and Mr. Jones personally appear on October 31, 2014, and show cause as to why they should not be held in constructive civil contempt for failing to comply with the requirement of the Circuit Court's scheduling order that Ms. Joyner attend the pretrial conference. [7]

*Trial Date and Postponement – October 15, 2014*

By coincidence, the *Joyner* matter was scheduled for trial, also before Judge White, on October 15, 2014. On that day, Mr. Jones asked for a postponement and also asked Judge White to recuse herself from the case. Judge White heard argument from Mr. Jones regarding his motion. The Commission later concluded that "[Mr.] Jones argued that Judge White had exhibited 'harshness' toward his client, had not shown his client consideration for her disabilities, and had 'insulted' him at the May 5, 2014 hearing."

---

[7] As Judge White noted in her papers filed in this Court, Ms. Joyner had a disability that made it difficult for her to participate in the pretrial conference. Judge White further described her decision to issue the show cause order in that filing:

> Mr. Jones made no attempt to seek accommodations under the Americans with Disabilities Act or to have a guardian appointed for [Ms. Joyner]. His only request that Ms. Joyner's appearance be excused was in two sentences buried in the body of a pretrial statement that the ADR Office received on the morning of the pretrial conference and thus could not be presented to a judge for decision. . . . The scheduling order's mandate of personal appearance at the settlement conference recognizes that for ADR to be effective all parties must be present.

7

Judge White ultimately decided to recuse herself from the trial of the *Joyner* case, but not from the show cause hearing related to the pretrial conference. In addressing Mr. Jones' motion for her recusal, Judge White stated in part:

> . . . [B]ecause I am incredulous, because I am in disbelief, because I find myself incapable of believing virtually anything that Mr. Jones has just told me, I'm in the unfamiliar territory of finding that I must recuse myself from any further proceedings in this case because I cannot believe anything that the Reverend Rickey Nelson Jones Esquire[8] – I'm reading off the letterhead – tells me. I think that 99% of what Mr. Jones has told me about his conduct on behalf of his client is pure bullshit[.] So I'm forced to recuse myself and I can't get past the idea that I cannot believe a darn thing that Mr. Jones tells me now. So I am compelled under … Rule 2.11 [of the Maryland Code of Judicial Conduct][9] to disqualify myself in any further proceedings in this case, because I now believe based on Mr. Jones' conduct and representations in this case, in his discussion and exploration of who struck John in recent days about his request for accommodation, all without following the precise instructions and procedures in the Scheduling Order and the website and resources available to him, I find that I cannot be impartial. I am personally biased or prejudiced concerning Mr. Jones and his conduct. So, I'm going to recuse myself.

Judge White then addressed Mr. Jones' motion for postponement. The Commission later found that "[w]hen [Mr.] Jones stated that he had appeared in postponement court the previous day, Judge White pointed toward and raised her voice at [Mr.] Jones for initiating another instance of *ex parte* communication."[10] Judge White then stated to Mr. Jones:

---

[8] Mr. Jones apparently uses the honorific "Reverend" in the name of his law firm.

[9] See footnote 13 below for the text of Rule 2.11(a)(1) of the Code of Judicial Conduct as of the date of the hearing.

[10] Judge White notes in her submission to us that, "[b]eginning on October 10, 2014, just after the show cause order was served, Mr. Jones made a series of attempts to engage in *ex parte* communications with Judge White, her chambers, and the chambers of another judge . . . ."

I am dumbfounded at your irresponsible behavior, Mr. Jones. All the more reason I am compelled by your dumbfounding behavior to recuse myself because I cannot believe a single word you say. And what I am compelled to do now because the Rules of Professional Conduct and the Judicial Code compel me to do so is to reexamine what I just said and heard and reported on the record whether I must report you to the Attorney Grievance Commission.

At the conclusion of the hearing, Judge White stated:

As for you, Mr. Jones, I have no way of knowing whether my pique and my frustration as to your performance in recent days will warrant my recusal in any further and future cases pending before this court. I take each case as it comes . . . While I'm shocked, frustrated, appalled, and consequently don't believe anything Mr. Jones has told me about the conduct of his office and himself in this case, and I don't believe that he has honored the court's orders in this case, I don't understand or believe that necessarily will carry over to any future other cases. I will take each case as it comes.

Notwithstanding her decision to recuse herself from the trial of the *Joyner* case, Judge White stated that she would preside over the October 31, 2014, hearing regarding the show cause order she had issued because, as she stated, it was her "responsibility to address it."

On October 15, 2014, Mr. Jones filed an Emergency Motion with Circuit Administrative Judge W. Michel Pierson for assignment of the October 31, 2014, show cause hearing to a judge other than Judge White. Judge White was not notified of the motion. Judge Pierson denied that motion.

*Trial of the Joyner Case*

The *Joyner* case went to trial the following week, on October 20, 2014, before another judge of the Circuit Court and resulted in a defense verdict. Ms. Joyner pursued an appeal to the Court of Special Appeals, which remains pending.

9

*Show Cause Hearing – October 31, 2014*

At the October 31, 2014, show cause hearing, Mr. Jones defended his attempt to excuse his client's absence from the pretrial conference. Mr. Jones contended that he had in fact complied with the rules because he had requested in his pretrial statement that Ms. Joyner be excused from the pretrial conference due to her health issues. When Mr. Jones cited case law purportedly in support of this contention, Judge White noted "[h]ow interesting that [the case is] captioned as an Attorney Grievance complaint." The Commission later noted in its Findings of Fact:

> At the conclusion of the hearing, Judge White found [Mr.] Jones in contempt for his failure and refusal to comply with the Scheduling Order and pre-trial conference procedures. She stated that [Mr.] Jones' argument that he complied with the Scheduling Order was "shocking" and was "soundly and roundly rejected." During her oral ruling, and by written order dated November 12, 2014, Judge White ordered [Mr.] Jones to pay attorney's fees to opposing counsel, related to his appearing at the pre-trial conference and the show cause hearing, and to write letters of apology to Mr. Trueman and to Judge Alpert for his "rude and uncivil behavior" at the pre-trial conference. Judge White made no mention at any time during the October 31, 2014 hearing, or within the written order, that she had previously recused herself from the *Joyner* case filed by [Mr.] Jones on behalf of Ms. Joyner.

We are advised that Mr. Jones appealed the contempt order in the *Joyner* case.

2. Complaints to Commission, Investigation, and Charges

Mr. Jones filed multiple complaints concerning Judge White with the Commission beginning on October 20, 2014. Following an investigation, and with the authorization of the Commission, Investigative Counsel filed charges dated March 31, 2016 against Judge White. Investigative Counsel alleged that Judge White had violated various provisions of

10

the Maryland Code of Judicial Conduct.[11]  All of the charges concerned Judge White's

conduct during the three hearings in the *Joyner* case during 2014.

3,      Pre-Hearing Proceedings Concerning the Charges

Judge White filed an Answer to the charges on May 2, 2016.  In her answer, Judge

White offered a detailed recitation of the proceedings before her in the *Joyner* case and

denied that her actions or statements during the hearings violated the Code of Judicial

Conduct.  Judge White also filed a motion to dismiss the charges.  Among other things,

Judge White argued that the pending appeal before the Court of Special Appeals in the

*Joyner* case concerned related issues and that the Commission's proceeding on Mr. Jones'

complaints against her had not complied with the procedural rules governing Commission

proceedings.

Judge White also directed discovery requests to Investigative Counsel pursuant to

the civil discovery rules.  The Chair of the Commission struck requests for admission and

interrogatories propounded by Judge White on the ground that Investigative Counsel was

not a "party" for purposes of the discovery rules.  Judge White appealed that ruling to the

full Commission.

After holding a hearing on the motion to dismiss on June 27, 2016, the Commission

denied the motion, adopting the response of Investigative Counsel.  The Commission also

---

[11] The Code of Judicial Conduct was then codified in Maryland Rule 16-813.  It has since been recodified with minor revisions as Maryland Rule 18-100.1 *et seq.*  In describing the Commission's findings and conclusions, we refer in this opinion to the provisions and text of the Code as they existed in 2014 at the time of the alleged misconduct.

opined that, even if it believed Judge White's arguments had merit, it had no authority to dismiss the charges prior to an evidentiary hearing. The Commission also noted that the rules provided for its Chair to decide discovery disputes, that the Chair's rulings had not deprived Judge White of a fair discovery process, and that, in any event, it lacked authority to review a ruling of its Chair denying discovery to Judge White.

4.      Evidentiary Hearing and Commission Order

On July 7 and 8, 2016, the Commission conducted an evidentiary hearing on the charges. On August 3, 2016, the Commission issued Findings of Fact, Conclusions of Law, and an Order of Public Reprimand. The Commission found by clear and convincing evidence that Judge White had committed sanctionable conduct. In particular, the Commission found that Judge White's treatment of Mr. Jones at the May 5, 2014 and October 15, 2014 hearings violated a provision of the Maryland Code of Judicial Conduct that requires judges to conduct themselves in a way that promotes public confidence in the impartiality of the judiciary.[12] The Commission also found that Judge White's

---

[12] That rule provided, at the time of the hearings in *Joyner*:

**Rule 1.2   Promoting Confidence in the Judiciary**

(a) A judge shall act at all times in a manner that promotes public confidence in the **independence**, integrity, and **impartiality** of the judiciary.

(b) A judge shall avoid conduct that would create in reasonable minds a perception of impropriety.

Former Maryland Rule 16-813, Rule 1.2 of the Code of Judicial Conduct (boldface in original).

12

participation in the October 31, 2014 show cause hearing, after she had admitted to bias toward Mr. Jones, violated not only that provision, but several other provisions of the Code of Judicial Conduct that require a judge to act impartially and to disqualify himself or herself from proceedings in which the judge's impartiality might reasonably be questioned.[13] The Commission determined that a public reprimand was the appropriate disposition under the circumstances.

---

[13] Those rules provided, at the time of the hearings in *Joyner*:

### Rule 2.2  Impartiality and Fairness

> A judge shall uphold and apply the law and shall perform all duties of a judicial office **impartially** and fairly.

Former Maryland Rule 16-813 – Rule 2.2 of the Code of Judicial Conduct (boldface in original).

### Rule 2.3  Bias, Prejudice, and Harassment

> (a)    A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

*Id*., Rule 2.3(a).

### Rule 2.11 Disqualification

> (a)    A judge shall disqualify himself or herself in any proceeding in which the judge's **impartiality** might reasonably be questioned, including the following circumstances:

> (1)    The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal **knowledge** of facts that are in dispute in the proceeding.

*Id.,* Rule 2.11(a)(1) (boldface in original).

## C.    *Proceedings After the Commission's Order*

On September 1, 2016, Judge White filed with this Court a pleading entitled "Appeal and, in the Alternative, Petition for Writ of Certiorari." In this filing, Judge White sought to have us review two issues: (1) whether the Commission had denied her procedural due process; and (2) whether the Commission had erred in finding sanctionable conduct and reprimanding her.

With respect to the claim of a denial of due process, Judge White asserted that she was not notified of Mr. Jones' various complaints for many months, that she was not provided with a copy of the Judicial Inquiry Board's report in a timely manner, that her written response to the charges may not have been provided to the Commission, that she was denied pre-hearing discovery to which she was entitled, and that her presentation of evidence at the hearing was unfairly restricted. With respect to the Commission's finding of sanctionable conduct and imposition of a reprimand, Judge White challenged the Commission's decision to the extent it was based on her decision not to recuse herself from the show cause hearing in the *Joyner* case after she had recused herself from the trial of that case.

On September 16, 2016, the Commission filed a motion to dismiss the appeal and for denial of the petition for writ of *certiorari*, arguing that Judge White had no right to appellate review in the matter, and that there were no grounds for the grant of a writ of *certiorari*. Judge White filed an opposition to the Commission's motion to dismiss on September 23, 2016.

On September 28, 2016, this Court ordered that the matter be set for a show cause hearing for the limited purpose of addressing the following questions related to the first issue raised by Judge White:

(1) Whether this Court has jurisdiction to decide whether [Judge White] was denied procedural due process during the Commission proceedings where the ultimate disposition of the Commission was a public reprimand?

(2) Whether, if the Court has such jurisdiction, the Commission failed to comply with the Maryland Rules governing its proceedings such that [Judge White] was denied procedural due process during those proceedings?

The Court held oral argument on November 4, 2016. In this opinion we address the first question. Resolution of the second question awaits the filing of the Commission's record with us and any further submissions by the parties.

## II

### Discussion

The immediate question before us is whether there is any mechanism for us to review Commission proceedings when the Commission determines that a reprimand is the appropriate discipline – a form of discipline that the Constitution authorizes the Commission to impose on its own without referring the matter to us.

We hold that there is no constitutional or statutory basis for this Court to exercise *appellate* jurisdiction to review the Commission's proceedings. We do have original jurisdiction, however, to conduct a limited review, pursuant to a common law writ of mandamus, of Judge White's claims that the Commission abused its discretion and deprived her of the procedural due process guaranteed by the State Constitution and

15

Maryland Rules. In order to conduct that review, we direct the Commission to file the record of its proceedings with us. To the extent that Judge White asks for review of matters that preceded the filing of charges, she must submit a written waiver of confidentiality to the Commission.

## A. *Whether an Accused Judge is Entitled to Procedural Due Process*

There is no question that a judge under investigation by the Commission or charged by the Commission with misconduct is entitled to due process. As outlined earlier, Article IV of the State Constitution sets forth the grounds on which a judge may be disciplined, removed, or retired, provides some basic parameters for Commission investigations and proceedings, and states the consequences of removal or involuntary retirement. The Constitution defers to this Court the task of designing a fair process by rule. Our rules embody the fundamental elements of procedural due process – they provide a judge with notice of the charges, an opportunity to respond to the charges in writing, pre-hearing discovery, and a hearing conducted under the rules of evidence. When the Commission refers a matter to this Court, the judge has an opportunity to file exceptions and to be heard.

There is also no question that, when the Commission recommends certain types of discipline to this Court – censure, removal, or other discipline – our review may include the fairness of the Commission proceeding. For example, in the first reported case concerning a Commission recommendation – a recommendation for censure of two judges – this Court considered a due process challenge to the Commission proceedings. *See In re Diener*, 268 Md. 659, 671, 677-79 (1973) (adopting, with some editing, the Commission's analysis why its procedures did not violate the judges' right to procedural due process).

16

While this Court concluded that the proceedings in that case accorded the judges due process, the Court noted that the Commission is bound "by the fundamental rules of fairness." *Id.* at 682. In another case involving a recommended censure of a judge, the majority opinion of this Court and a dissenting opinion debated at some length whether the charges in that case were based on an unconstitutionally vague standard – an issue that relates to the notice aspect of procedural due process. *In re Foster*, 271 Md. 449, 476-77, 486-504 (1974).

Under the Constitution and our rules, an accused judge is entitled to these elements of procedural due process – notice, an opportunity to respond, a fair hearing – regardless of the outcome – *i.e.*, whether the Commission ultimately decides to dismiss the charges, reprimand the judge, or recommend that we censure, discipline, or remove the judge. Of course, a minor deviation from the rules without prejudice to the judge would not undermine this guarantee. To paraphrase a principle sometimes stated in the context of criminal proceedings, an accused judge is entitled to a fair proceeding, but not necessarily a perfect proceeding.[14] Nor does the promise of a fair process entitle a judge to any particular outcome in a given case.

---

[14] *See, e.g., Dorsey v. State*, 276 Md. 638, 647 (1976) ("it is firmly established that an accused has a constitutional right to a fair trial but not necessarily to that seldom experienced rarity, a perfect trial") (quotation marks and citations omitted).

***B.   Whether There is a Mode of Review***

The question before us is whether there is any opportunity for review of the fairness

of a Commission proceeding when the Commission elects to reprimand a judge itself in

lieu of recommending other discipline by the Court of Appeals.

1.   Appeal and *Certiorari*

Judge White has characterized her request for review in the alternative as either an

appeal or a petition for a writ of *certiorari*.  "It is an often stated principle of Maryland law

that appellate jurisdiction, except as constitutionally authorized, is determined entirely by

statute, and that, therefore, a right of appeal must be legislatively granted."  *Gisriel v.*

*Ocean City Bd. of Supervisors of Elections,* 345 Md. 477, 485 (1997), *cert. denied,* 522

U.S. 1053 (1998); *see also Maryland-Nat'l Capital Park & Planning Comm'n v. Smith,*

333 Md. 3, 7 (1993).  Neither the constitutional provisions that create the Commission

process nor any statute provides for an appeal of a Commission reprimand.

With respect to granting a writ of *certiorari*, this Court's authority is set forth in CJ

§12-201, which provides:

> Except as [limited by] §12-202 of this subtitle, *in any case or*
> *proceeding pending in or decided by the Court of Special Appeals upon*
> *appeal from a circuit court or an orphans' court or the Maryland Tax*
> *Court*, any party, including the State, may file in the Court of Appeals
> a petition for certiorari to review the case or proceeding.  The petition
> may be filed either before or after the Court of Special Appeals has
> rendered a decision, but not later than the time prescribed by the
> Maryland Rules.  In a case or proceeding described in this section, the
> Court of Appeals also may issue the writ of certiorari on its own motion.

(emphasis added).  As is evident, at a minimum, a case must be "pending in or decided by

the Court of Special Appeals upon appeal from a circuit court or an orphans' court or the

Maryland Tax Court" in order for this Court to grant a writ of *certiorari*. This case does not satisfy that criterion. Thus, CJ §12-201 does not provide this Court with a statutory basis to grant a writ of *certiorari*.

2.       Common Law Mandamus

While there is no *appellate* jurisdiction for review of Judge White's claims, this Court is able to review her allegation that the Commission proceeding denied her procedural due process as a petition for a common law writ of mandamus. Although Judge White's filing in this Court was entitled "Appeal and, in the Alternative, Petition for Writ of Certiorari," the filing's label does not prevent this Court from treating the filing as a request for a common law writ of mandamus. *See, e.g., Gisriel*, 345 Md. at 500 ("Even where a particular action against an administrative agency was allegedly brought under a statutory judicial review provision, and did not purport to be a mandamus action, this Court has looked to the substance of the action, has held that it could be treated as a common law mandamus or certiorari action . . ."); *see also Board of License Comm'rs for Anne Arundel County v. Corridor Wine, Inc.*, 361 Md. 403, 411-12 (2000) (nonstatutory judicial review of administrative adjudicative decision generally denominated as a "mandamus" action).[15]

---

[15] This Court has recognized the concept of "administrative mandamus" as an extension of common law mandamus, *Talbot County v. Miles Point Prop., LLC*, 415 Md. 372, 394 (2010), for judicial review of certain quasi-judicial administrative decisions when judicial review is not otherwise expressly provided by law, and has adopted regulations elaborating that concept for such review by a circuit court, *see* Maryland Rule 7-401 *et seq.* (incorporating procedures set forth in Maryland Rule 7-201 *et seq.*).

Our holding regarding the availability of mandamus in this Court in the absence of a right of appeal is expressly limited to these circumstances – review of a judicial disciplinary matter resulting in an order of public reprimand by the Commission. *Compare*

19

*Nature of Mandamus*

"Mandamus is an original action, as distinguished from an appeal." *Goodwich v. Nolan*, 343 Md. 130, 145 (1996) (citation and quotation omitted). It is "an extraordinary remedy that is generally used to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which the party applying for the writ has a clear legal right. The writ ordinarily does not lie where the action to be reviewed is discretionary or depends on personal judgment." *Falls Road Community Ass'n, Inc. v. Baltimore County*, 437 Md. 115, 139 (2014) (citations and quotations omitted); *Dep't of Human Resources, Baltimore City Dep't of Soc. Servs. v. Hayward*, 426 Md. 638, 646 (2012). This Court has repeatedly recognized that "[c]ourts have the inherent power, through the writ of mandamus, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or with the exercise of sound administrative discretion, where discretion is clearly conferred." *Hecht v. Crook*, 184 Md. 271, 281 (1945); *see also Heaps v. Cobb*, 185 Md. 372, 379 (1945); *Hammond v. Love*, 187 Md. 138, 143-44 (1946) *cf. Lamb v. Hammond*, 308 Md. 286, 303-4 (1987). "Where the

---

*State v. Manck*, 385 Md. 581, 600 (2005) (holding that mandamus was not available in "aid of appellate jurisdiction" with respect to trial court's decision striking State's notice of intention to seek death penalty in capital murder prosecution, where the State did not have a statutory right to appeal from trial court's decision). Given this Court's responsibilities for judicial discipline, including procedure, a request for a writ of mandamus is appropriately directed to this Court rather than a circuit court. *See Griffen v. Arkansas Judicial Discipline & Disability Comm'n*, 247 S.W.3d 816, 822 (2007).

obligation to perform some particular duty is unclear or involves the exercise of any 'vestige of discretion,' . . . the writ of mandamus will not be granted." *Baltimore County v. Baltimore County Fraternal Order of Police Lodge No. 4*, 439 Md. 547, 571-72 (2014).

*Review of Claim that Commission Denied Due Process*

As outlined above, the Commission has a duty to provide procedural due process, as set forth in the State Constitution and Maryland Rules, to an accused judge who is the subject of one of its proceedings. Thus, under a writ of mandamus, this Court may properly review Judge White's claim that the Commission deprived her of procedural due process. Were it otherwise, the fundamental fairness embodied in the process set out in the Constitution and rules could be an empty promise.

*Review of Merits of Reprimand*

Our review under a writ of mandamus, however, is limited. The Constitution and our rules provide for the Commission to issue a reprimand without approval or review by this Court. The Commission's decision to issue a public reprimand is properly classified as a non-ministerial discretionary act that is dependent upon the judgment of the Commission members. *Once the Commission has provided an accused judge with the requisite due process*, it is entrusted to the Commission's discretion whether to dismiss the charges, reprimand the judge, or recommend other discipline to us. Thus, a writ of mandamus is not available to review a claim that the Commission erred in concluding that a judge committed sanctionable conduct or in its judgment to reprimand the judge as a result of that conclusion.

21

**Conclusion**

For the reasons stated above, we conclude that this Court has authority to consider Judge White's arguments as to whether the Commission proceeding accorded her with the due process required by the Maryland Constitution and the Maryland Rules. However, we are not able at this juncture to conduct that review.

The Commission has not responded in any detail to Judge White's contentions that she did not receive the process she was due. At oral argument, counsel for the Commission expressed some hesitation about responding specifically to the arguments of Judge White concerning the Commission's alleged deviations from the Maryland Rules, given the confidentiality that clothes much of the Commission's pre-charging activities. To a certain extent, that concern is well taken. *See* Maryland Constitution, Article IV, §4B(a)(3); Maryland Rule 18-409.

The statement of charges and the proceedings before the Commission that followed the filing of the statement of charges are *not* confidential. Maryland Rule 18-409(a)(3). However, the investigation and the process involving the Judicial Inquiry Board, and any other proceedings prior to the filing of charges remain confidential, unless the accused judge files a written waiver of confidentiality. Maryland Rule 18-409(b)(1). To the extent that Judge White bases her claims on events that occurred prior to the filing of charges, she should file a written waiver of confidentiality with the Commission.

In order to carry out the review of Commission proceedings for which we have jurisdiction, we direct the Commission to file the record of the proceedings concerning its

22

charges against Judge White, including that part of its record relating to the pre-charging period for which Judge White waives confidentiality. Once the record has been filed with the Court, the parties shall submit additional briefs and an appropriate record extract, according to a schedule set forth by future order of the Court. Such briefing shall be limited to the question of whether the Commission proceedings failed to comply with the Constitution and Maryland Rules and, if so, whether any such failure affected the fundamental fairness of the proceeding.

**IT IS SO ORDERED.**