*In the Matter of the Honorable Mary C. Reese*, *Judge of the District Court of Maryland for Howard County, Tenth Judicial Circuit*, Judicial Disabilities No. 2, September Term, 2017. Opinion by Hotten, J.

**JUDGES – REMOVAL OR DISCIPLINE – NO SANCTION – STANDARD OF REVIEW**

Following an independent review of the record, the Court of Appeals concluded that Judge Reese did not commit sanctionable conduct.

**JUDGES – REMOVAL OR DISCIPLINE – NO SANCTION – PROCEEDINGS AND REVIEW – SANCTIONABLE CONDUCT**

Maryland Rule 18-401 defines "sanctionable conduct" as "misconduct while in office, the persistent failure by a judge to perform the duties of the judge's office, or conduct prejudicial to the proper administration of justice." The Court of Appeals held that under the circumstances, the Maryland Commission on Judicial Disabilities' conclusion that Judge Reese committed sanctionable conduct was legally incorrect. Here, there was no factual basis to support the conclusion that Judge Reese committed misconduct while in office, persistently failed to perform her duties of office, engaged in conduct that was prejudicial to the administration of justice, or violated Rule 18-101.1 or 18-102.5(a) in the context of conducting a peace order hearing in the District Court of Maryland.

Maryland Commission on Judicial Disabilities
Case No. CJD 2015-132, CJD 2015-133 and CJD 2015-134
Argued: March 6, 2018

<u>IN THE COURT OF APPEALS</u>

<u>OF MARYLAND</u>

Judicial Disabilities Docket No. 2

September Term, 2017

_____

IN THE MATTER OF THE
HONORABLE MARY C. REESE,
JUDGE OF THE DISTRICT COURT OF
MARYLAND FOR HOWARD
COUNTY, TENTH JUDICIAL CIRCUIT

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.
Watts, J., concurs.

_____

Filed: July 31, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

In this judicial disabilities case, we examine the decision of the Commission on Judicial Disabilities ("the Commission"), which determined that the Honorable Mary C. Reese ("Judge Reese") committed sanctionable conduct during the course of presiding over a peace order hearing. Maryland Rule 18-401 defines "sanctionable conduct" as "misconduct while in office, the persistent failure by a judge to perform the duties of the judge's office, or conduct prejudicial to the administration of justice." Additionally, Maryland Rule 18-401 provides that "[a] judge's violation of any of the provisions of the Maryland Code of Judicial Conduct promulgated by Title 18, Chapter 100 may constitute sanctionable conduct."

In August 2014 and February 2015, Judge Reese presided over two hearings at which the petitioners sought a protective order and a peace order, respectively. Judge Reese's conduct during these hearings formed the basis for complaints of judicial misconduct. Investigative Counsel charged Judge Reese with violating multiple rules of judicial conduct. Following an evidentiary hearing, the Commission concluded that Judge Reese committed sanctionable conduct in the February 2015 peace order hearing and recommended to this Court that she attend training. Judge Reese filed exceptions. On March 6, 2018, we heard oral argument and, on March 22, 2018, issued a *per curiam* order, disagreeing with the Commission's conclusion and dismissing the matter with prejudice. We were not persuaded that the judge's exercise of judicial discretion constituted sanctionable conduct or violated Rule 18-101.1 or 18-102.5(a). We shall now explain why.

**BACKGROUND**

Judge Reese has served as an Associate Judge of the District Court of Maryland, District Ten, which includes both Howard and Carroll counties, since 2006. On July 31, 2015, the Women's Law Center of Maryland ("the Women's Law Center") filed a complaint against Judge Reese with the Maryland Commission on Judicial Disabilities ("the Commission"). The Women's Law Center is a statewide non-profit organization that has operated the Protective Order Representation and Advocacy Project, a program providing direct legal services for victims of domestic violence, for over twenty years.[1] The crux of the Women's Law Center complaint involves Judge Reese's conduct overseeing protective and peace orders, and cites three cases for reference: *Lauren M. Lewis v. Richelieu W. James* (Case No. 1002SP004962014), *Patricia Stein v. Benton Stephen Lecuyer* (Case No.1002SP001402015), and *Biden v. Kramer* (Case No. 1002SP005512014)[2]. In addition to the Women's Law Center complaint, two of the individuals referenced therein, Lauren M. Lewis and Patricia Stein, also filed complaints against Judge Reese.[3] Although the complete transcripts for the *Lewis* and *Stein* matters

---

[1] *See* Women's Law Center of Maryland, Our Work, http://www.wlcmd.org/about-us/our-work/ (https://perma.cc/U969-CDGP) (last visited July 24, 2018).

[2] The Commission did not include the charges stemming from *Biden v. Kramer* (Case No. 1002SP005512014) in its complaint.

[3] The record indicates that the Women's Law Center represented Ms. Lewis in her complaint against Judge Reese.

were accepted into evidence as joint exhibits before the Commission, the *Lewis* matter was dismissed by the Commission for insufficient evidence.

*Patricia Stein v. Benton Stephen Lecuyer*

On February 18, 2015, Judge Reese presided over the matter of *Patricia Stein v. Benton Stephen Lecuyer*, Case No. 1002SP001402015. Patricia Stein filed a Petition for Peace Order on behalf of her seventeen-year-old granddaughter, Tricia Hiltz. In presenting an *ex parte* petition for a peace order under Md. Code (Repl. Vol. 2013), § 3-1504 of the Courts and Judicial Proceedings,[4] ("Cts. & Jud. Proc."), Ms. Stein alleged that a former

---

[4] Cts. & Jud. Proc. § 3-1504 states:

**Relief provided in temporary peace order**

(a)(1) If after a hearing on a petition, whether ex parte or otherwise, a judge finds that there are reasonable grounds to believe that the respondent has committed, and is likely to commit in the future, an act specified in § 3-1503(a) of this subtitle against the petitioner, the judge may issue a temporary peace order to protect the petitioner.

(2) The temporary peace order may include any or all of the following relief:

> (i) Order the respondent to refrain from committing or threatening to commit an act specified in § 3-1503(a) of this subtitle against the petitioner;
>
> (ii) Order the respondent to refrain from contacting, attempting to contact, or harassing the petitioner;
>
> (iii) Order the respondent to refrain from entering the residence of the petitioner; and
>
> (iv) Order the respondent to remain away from the place of employment, school, or temporary residence of the petitioner.

3

(3) If the judge issues an order under this section, the order shall contain only the relief that is minimally necessary to protect the petitioner.

## Service of order by law enforcement officer

(b)(1) Except as provided in paragraph (2) of this subsection, a law enforcement officer immediately shall serve the temporary peace order on the respondent.

(2) A respondent who has been served with an interim peace order under § 3-1503.1 of this subtitle shall be served with the temporary peace order in open court or, if the respondent is not present at the temporary peace order hearing, by first-class mail at the respondent's last known address.

## Duration of order

(c)(1) Except as otherwise provided in this subsection, the temporary peace order shall be effective for not more than 7 days after service of the order.

(2) The judge may extend the temporary peace order as needed, but not to exceed 30 days, to effectuate service of the order where necessary to provide protection or for other good cause.

(3) If the court is closed on the day on which the temporary peace order is due to expire, the temporary peace order shall be effective until the second day on which the court is open, by which time the court shall hold a final peace order hearing.

## Final peace order hearings

(d) The judge may proceed with a final peace order hearing instead of a temporary peace order hearing if:

(1)(i) The respondent appears at the hearing;

(ii) The respondent has been served with an interim peace order; or

(iii) The court otherwise has personal jurisdiction over the respondent; and

4

boyfriend, Mr. Lecuyer, attacked her granddaughter. The relationship between Ms. Hiltz and Mr. Lecuyer ended two weeks before Mr. Lecuyer tracked her by phone to a friend's home. Upon discovering Ms. Hiltz inside the home, Mr. Lecuyer assaulted her and her friend, resulting in visible bruising around Ms. Hiltz's eyes. During the hearing, Ms. Hiltz indicated that she blocked Mr. Lecuyer from her phone, and she had not spoken to him since the incident. The transcript of Judge's Reese's examination of Ms. Hiltz, reflected the following:

Q What do you want to tell me, ma'am?

A Well, everything she said is true.

MS. STEIN: Well, what do you got to -- I mean --

BY THE COURT:

Q Has this ever happened before?

A No.

Q Okay. Did you have any conversation with him that day?

A No. I blocked him from my phone. His phone number is blocked.

THE COURT: Okay. All right. It looks to me like she's taking care (sic) of it. Okay?

MS. STEIN: Mm-hmm.

---

(2) The petitioner and the respondent expressly consent to waive the temporary peace order hearing.

5

THE COURT: I have to be able to find two things. One, is that one of the nine statutory forms of abuse have occurred. And, number two, he's likely to commit the purported act against her in the future.

And I don't have any indication from his past behavior that anything like this is likely to occur again in the future. So I'm not going to enter the order today. If anything else were to occur, you can go to the commissioner's office if the court is not open. Or you can come back to the courthouse to file for relief. Okay?

MS. STEIN: Okay.

As the record reflects, Judge Reese found insufficient evidence that the abuse was likely to occur in the future, but advised that if another incident occurred, Ms. Stein and Ms. Hiltz could return to the court to seek relief. An appeal of the denial of the peace order was filed in the Circuit Court for Carroll County, but later dismissed after the circuit court determined that Ms. Hiltz was not eligible for a peace order.

**Proceedings before the Commission on Judicial Disabilities**

Based on the complaints filed, the Commission filed a Statement of Charges on April 16, 2017.

In an attempt to describe the nature of the sanctionable conduct, the charges reflected the following:

Judge Reese engaged in behavior that failed to promote public confidence in the independence, integrity, and impartially of the judiciary. Judge Reese was not performing her duties impartially and fairly and was manifesting bias or prejudice regarding the litigants appearing before her. In the *Lecuyer* case, Judge Reese afforded Petitioner a mere four (4) minute hearing before denying her requested relief after a few short inquiries, both undermining public confidence in the judiciary and denying her the right to be heard.

6

> Judge Reese's behavior provides evidence that [she] engaged in conduct that was prejudicial to the proper administration of justice in Maryland Courts[.]

As a result, Judge Reese was charged with violating the following rules of the Maryland Code of the Judicial Conduct:

> Rule 18-101.1 (formerly Rule 1.1) COMPLIANCE WITH THE LAW
> A judge shall comply with the law, including this Code of Judicial Conduct.
>
> Rule 18-101.2 (formerly Rule 1.2) PROMOTING CONFIDENCE IN THE JUDICIARY
> **(a) Promoting Public Confidence.** A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary.
> **(b) Avoiding Perception of Impropriety.** A judge shall avoid conduct that would create in reasonable minds a perception of impropriety.
>
> Rule 18-102.2 (formerly Rule 2.2) IMPARTIALITY AND FAIRNESS
> **(a)** A judge shall uphold and apply the law and shall perform all duties of judicial office impartially and fairly.
> **(b)** A judge may make reasonable efforts, consistent with the Maryland Rules and other law, to facilitate the ability of all litigants, including self-represented litigants, to be fairly heard.
>
> Rule 18-102.3 (formerly Rule 2.3) BIAS, PREJUDICE, AND HARASSMENT
> **(a)** A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.
>
> Rule 18-102.5 (formerly Rule 2.5) COMPETENCE, DILIGENCE, AND COOPERATION
> **(a)** A judge shall perform judicial and administrative duties competently, diligently, promptly, and without favoritism or nepotism.
>
> Rule 18-100.4 (formerly C-101, C-102, and C-103) PREAMBLE

7

**(a) Importance of Independent, Fair, Competent, Impartial Judiciary.** An independent, fair, competent, and impartial judiciary composed of men and women of integrity who will interpret and apply the law that governs our society is indispensable to our system of justice. Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law. Inherent in all the Rules contained in this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system.

**(b) Dignity of Judicial Office.** Judges should maintain the dignity of judicial office at all times, and avoid both impropriety and the appearance of impropriety in their professional and personal lives. They should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence.

**(c) Function of Code of Judicial Conduct.** This Code of Judicial Conduct establishes standards for the ethical conduct of judges and judicial candidates. It is not intended as an exhaustive guide for the conduct of judges and judicial candidates, who are governed in their judicial and personal conduct by general ethical standards as well as by this Code. This Code is intended, however, to provide guidance and assist judges in maintaining the highest standards of judicial and personal conduct, and to provide a basis for regulating their conduct through disciplinary agencies.

On May 25, 2017, Judge Reese, through counsel, filed an Answer to the Commission's charges.

On November 11, 2017, the Commission conducted a hearing. Investigative Counsel called no witnesses to testify, but played an audio recording of the proceedings in *Patricia Stein v. Benton Stephen Lecuyer*, Case No. 1002SP001402015. Judge Reese called four character witnesses: Lorraine Lawrence Whittaker, Esquire, a private attorney

8

specializing in family law, Carol Hanson, Esquire, the District Public Defender for Howard and Carroll counties, Judge Joseph Murphy, and Judge James N. Vaughan. Judge Reese also testified on her own behalf.

Ms. Whittaker testified that she has appeared before Judge Reese for the last nine years as counsel in both criminal and civil cases, including protective order matters. In her experience appearing before Judge Reese, Ms. Whittaker believed that Judge Reese was fair and unbiased. Ms. Hanson has known Judge Reese for twenty years in a professional capacity. Ms. Hanson testified that she has appeared before Judge Reese as counsel in domestic violence matters on multiple occasions. Although Ms. Hanson did not always agree with Judge Reese's decisions, Ms. Hanson opined that Judge Reese consistently treated litigants and attorneys with fairness and respect.

Judge Reese testified that before she became a judge, she served as an Assistant State's Attorney for Howard County and as a private defense attorney for Reese & Carney, a private law firm. Judge Reese testified that on a weekly basis, she presided over traffic cases, landlord-tenant cases, and one day a week, domestic violence cases, including peace orders and protective orders. Judge Reese also singularly presided over mental health cases. She understood that in her capacity as a judge, she was tasked to listen to the individuals that come before her, the facts presented, and apply those facts to the law. Judge Reese indicated that she was aware of what the relevant peace order statute, Cts. & Jud. Proc. § 3-1504, requires. She testified that she also is familiar with the Maryland Judge's Domestic Violence Manual, October 2009 Edition, and kept a copy at the bench.

9

Judge Reese was not aware that prior to the Commission's charges against her, the 2006 and the 2009 volumes of the domestic violence manual stated that for a Temporary Peace Order to be granted, the petitioner only needed to prove abuse occurred.

Regarding the *Stein v. Lecuyer* matter, Judge Reese testified that it was her understanding that she was required to find that one of the nine statutory forms of abuse had occurred, and that the abuse was likely to occur again in the future. Judge Reese explained that she received insufficient information from Ms. Stein to grant a peace order. When Judge Reese asked Ms. Hiltz for additional information, Ms. Hiltz responded "[w]ell, everything she said is true." Judge Reese considered that *Coburn v. Coburn*, 342 Md. 244, 674 A.2d 951 (1996) allows the court to consider prior history of abuse when granting a petition for protection, but Ms. Hiltz simply said "[n]o" when asked if any abuse occurred before. Judge Reese testified that she believed the Rules of Professional Conduct prohibited her from asking any further questions, for fear that she would appear biased and advocating for one party over another in an *ex parte* proceeding.

Prior to the hearing, Judge Reese designated three retired judicial expert witnesses in the areas of judicial ethics and the applicable standard for Maryland judges: Judge Joseph Murphy, Jr., former Judge of the Court of Appeals and former Chief Judge of the Court of Special Appeals; Judge James Vaughan, former Chief Judge of the District Court of Maryland; and Judge Frederick Smalkin, former Chief Judge of the United States District Court for the District of Maryland. Each proposed expert witness reviewed the transcripts and audio recordings of the relevant proceedings before Judge Reese, the

charges in this case, and Judge Reese's answer to the charges. Investigative Counsel filed a Motion *in Limine* to exclude the proposed expert witnesses, on the grounds that such testimony could "undermine the duties of the members of the Commission" and would not lend anything to the Commission's deliberations. The Commission granted Investigative Counsel's motion without explanation. Judge Reese was allowed to submit written proffers from the experts on what they would have testified to regarding "judicial ethics, attorney ethics, Maryland courtroom procedure, and Maryland law governing peace order and protective orders," and Judge Reese's compliance with her obligations under the applicable standard.

Each expert was prepared to opine, in essence, that Judge Reese handled the cases appropriately and did not violate any of the Maryland Rules or the Code of Judicial Conduct. Judge Vaughan's proffered testimony was that as a Maryland District Court judge, he routinely presided over petitions for protective orders and peace orders. In fact, Judge Vaughan was Chief Judge of the District Court of Maryland when the District Court played a leading role in implementing new legislation that allowed District Court Commissioners to consider petitions and issue interim peace and protective orders when the District Court was not in session. Judge Vaughan would have opined that Judge Reese's decision to deny relief under Cts. & Jud. Proc. § 3-1504 was an appropriate application of the statute, because a judge could conclude that Ms. Hiltz was not entitled to relief based on the facts presented.

Judge Murphy's proffered testimony regarding the *Lecuyer* case was that it was not Judge Reese's role to attempt to prove Ms. Hiltz's case for her, even though she was *a pro se* litigant, and therefore, Judge Reese did not violate any of the Maryland Rules.

Judge Smalkin similarly would have opined that Judge Reese did not violate the pertinent Maryland Rules.

### The Findings of Fact, Conclusions of Law, and Order

On December 19, 2017, the Commission issued Findings of Fact, Conclusions of Law, Order and Recommendations to Judge Reese, pursuant to Maryland Rule 18-407(j) and (k). The Commission issued an Amended version of the Findings of Fact, Conclusions of Law, Order and Recommendations on December 22, 2017. In its Order, the Commission found that Judge Reese committed sanctionable conduct by clear and convincing evidence, based on a finding that Judge Reese was not in compliance with legal standards in the matter of *Patricia Stein v. Benton Stephen Lecuyer*. The Commission found that Judge Reese "did not exhibit the thoroughness or diligence necessary to render any decision she was to make as part her judicial responsibilities."[5] The Commission particularly took issue with the factual circumstances of the minor child, Ms. Hiltz, who was unrepresented and had visible bruising around her eyes. According to the Commission, Judge Reese's interaction with Ms. Hiltz lasted nineteen seconds, and the entire hearing lasted three

---

[5] In its Findings of Fact and Conclusions of Law, the Commission did not specifically express how Judge Reese's conduct failed to exhibit thoroughness and diligence.

12

minutes. As a result, the Commission concluded that Judge Reese violated Maryland Rule 18-101.1 and Maryland Rule 18-102.5(a).

In deciding on the imposition of sanctions, the Commission considered the following:

> [T]he testimony of the character witnesses offered by Judge Reese, all of whom described the Respondent as consistent, polite and conscientious. The Commission did not find the testimony of the lawyers who regularly appear before the Respondent to be persuasive. The Commission also found that portions of the testimony of the judges who testified to be of little value, as they never observed the Respondent presiding in court. The Commission did consider the reputation testimony offered by each of the witnesses, and found that information to be helpful. The Commission also considered the Respondent's lack of any prior history with the Commission.

The Commission also considered testimony from Judge Reese, including her statement that, "I have to follow the Rules of Professional Conduct and I felt that if I had gone any further than I had already done that I would have been violating those Rules."

Based on the evidence presented, the Commission determined that Judge Reese would benefit from additional education, and recommended that she be ordered to attend specialized training approved by the Commission, for at least five calendar days. The training would address the dynamics of domestic violence victims, protective orders, *pro se* litigants, and social media.

Commissioners Judge Robert B. Kershaw, Richard M. Karceski, Esquire, Vernon Hawkins, Jr., and Marisa Trasatti, Esquire, issued a Dissenting Opinion on December 18, 2017 ("Dissent I"). On that same day, Commissioners Richard M. Karceski, Esquire, and Marisa Trasatti, Esquire, filed an additional opinion dissenting in part and concurring in

13

part with the Commission's majority ("Dissent II"). In Dissent I, while departing from the majority's Findings of Fact and Conclusions of Law, the dissenting Commissioners included the following:

> While we hypothetically may have reached a different decision than Judge Reese in [*Patricia Stein*] *v. Benton Stephen Lecuyer*, Case No. 1002[S]P001402015, we do not find on this record by clear and convincing evidence, that Judge Reese committed sanctionable conduct. We are not convinced Judge Reese's admittedly brief hearing in the *Lecuyer* case or her conduct therein violated Maryland Rule 18-101.1 or Maryland Rule 18-102.5(a) on either bias found by a majority of the participating Commission members.

> Judge Reese's conduct was well within the boundaries of her independent judicial discretion and consistent with the testimony of each of the persuasive character witnesses who appeared on Judge Reese's behalf. Judge Reese's decision in this case was subject to appellate review, but not a basis for a finding of sanctionable conduct by the Commission.

> All matters before the Commission in charges should have been dismissed.

In Dissent II, Commissioners Trasatti and Karceski aimed to convey the necessity that the Maryland Rules governing judicial disabilities be modified. These Commissioners were not persuaded that there was clear and convincing evidence of sanctionable conduct. However, "the rules which forced commissioners to refer the case to the Court of Appeals instead of recommending retraining" were the primary issue. As the dissenters explained, "the purpose of [Dissent II] is to highlight the shortcomings in the present rules in hopes that the Court of Appeals will modify them so as to make this Commission more helpful to judges and less punitive to them." In the dissenters' view, Judge Reese would have

benefited from one-on-one training or mentorship; however, the current iteration of the Maryland Rules would not permit such training without an agreement of Discipline by Consent, which requires the judge admit to the charges. *See* Md. Rule 18-407(l). In criticizing the Commission, the dissenters also observed that the Commission is thwarted from providing informal remedies by speaking privately with the judge. Further, the dissenting Commissioners took issue with Judge Reese's expert testimony preclusion, and criticized that nothing in the Maryland Rules speaks to the scope of expert testimony before the Commission. Thus, the Commissioners implored this Court to provide modifications in the Maryland Rules, consistent with their concerns.

## Exceptions to the Commission's Findings of Fact, Conclusions of Law, and Order

On January 18, 2018, Judge Reese, through counsel, filed Exceptions to the Amended Findings of Fact, Conclusions of Law, Order and Recommendations of Maryland Commission on Judicial Disabilities with this Court. In this filing, Judge Reese argued that the Commission erred in finding that she committed sanctionable conduct, and urged this Court to dismiss the charges against her with prejudice. Judge Reese reiterated that based on the evidence presented in the peace order matter involving Ms. Stein and Ms. Hiltz, her decision to deny the peace order was appropriate. Further, Judge Reese excepted on the grounds that she was denied the opportunity to conduct full discovery, and barred from presenting relevant expert testimony and other relevant evidence.

15

The Commission responded to Judge Reese's exceptions on February 2, 2018. The Commission asserted that following the Commission's deliberative and careful review of the charges, clear and convincing evidence existed to adopt the Commission's recommendations. The Commission responded that Judge Reese was provided a full opportunity to exchange information, pursuant to Maryland Rule 18-407(g),[6] which differs from traditional discovery. The Commission conceded that Judge Reese's expert witnesses

---

[6] Maryland Rule 18-407(g) governs the exchange of information before the Judicial Disabilities Commission, and states the following:

(g) **Exchange of Information.**

(1) Upon request of the judge at any time after service of charges upon the judge, Investigative Counsel shall promptly (A) allow the judge to inspect the Commission Record and to copy all evidence accumulated during the investigation and all statements as defined in Rule 2-402 (f) and (B) provide to the judge summaries or reports of all oral statements for which contemporaneously recorded substantially verbatim recitals do not exist, and

(2) Not later than 30 days before the date set for the hearing, Investigative Counsel and the judge shall each provide to the other a list of the names, addresses, and telephone numbers of the witnesses that each intends to call and copies of the documents that each intends to introduce in evidence at the hearing.

(3) Discovery is governed by Title 2, Chapter 400 of these Rules, except that the Chair of the Commission, rather than the court, may limit the scope of discovery, enter protective orders permitted by Rule 2-403, and resolve other discovery issues.
(4) When disability of the judge is an issue, on its own initiative or on motion for good cause, the Chair of the Commission may order the judge to submit to a mental or physical examination pursuant to Rule 2-423.

16

were barred through the Commission's pre-hearing order, but contends that the proposed experts could have been offered as character witnesses on Judge Reese's behalf.

## JURISDICTION

The Commission was expressly established as an independent body pursuant to Article IV of the Maryland Constitution. *See* MD. CONST. art. IV, § 4A (establishing the Commission of Judicial Disabilities); MD. CONST. art. IV, § 4B(a)(5) (stating that "[t]he Court of Appeals shall prescribe by rule the means to implement and enforce the powers of the Commission and the practice and procedure before the Commission"); *In re Diener*, 268 Md. 659, 670, 304 A.2d 587, 594 (1973) (holding the "the Commission is not within the ambit of the Administrative Procedure Act[ ]"). The Commission is a court-supporting agency composed of eleven members, whose responsibility is to monitor and investigate complaints of judicial misconduct and alleged physical or mental disabilities of Maryland judges. Pursuant to Article IV, § 4A(d), each member serves a definite term, as each member may not serve more than two four-year terms, or for more than a total of ten years. The Commission "may administer oaths and affirmations, subpoena any witness, compel his attendance, take evidence and require the production of any…tangible thing which the Commission finds relevant or material to an inquiry or proceeding before it." Cts. & Jud. Proc. § 13-401.

The Maryland Constitution and the Maryland Rules provide jurisdiction for the Court to review this matter. Article IV, § 4B(a)(2) of the Maryland Constitution provides that "[t]he Commission has the power to issue a reprimand *and* the power to recommend

17

to the Court of Appeals the removal, censure, or other appropriate disciplining of a judge or, in an appropriate case, retirement." (Emphasis added). Article IV, § 4B (a)(5) further provides that "[t]he Court of Appeals shall prescribe by rule the means to implement and enforce the powers of the Commission and the practice and procedure before the Commission." Md. Rule 18-407(k)[7] allows the Commission to refer matters to the Court of Appeals following certain procedural measures. Once the matter is referred, we have

---

[7] Md. Rule 18-407(k) provides:

**(k) Record**. If the Commission refers the case to the Court of Appeals, the Commission shall:

(1) make written findings of fact and conclusions of law with respect to the issues of fact and law in the proceeding, state its recommendations, and enter those findings and recommendations in the record in the name of the Commission;

(2) cause a transcript of all proceedings at the hearing to be prepared and included in the record:

(3) make the transcript available for review by the judge and the judge's attorney in connection with the proceedings or, at the judge's request, provide a copy to the judge at the judge's expense;

(4) file with the Court of Appeals the entire hearing record which shall be certified by the Chair of the Commission and shall include the transcript of the proceedings, all exhibits and other papers filed or marked for identification in the proceeding, and all dissenting or concurring statements by Commission members; and

(5) promptly mail to the judge at the judge's address of record notice of the filing of the record and a copy of the findings, conclusions, and recommendations and all dissenting or concurring statements by Commission members.

18

the authority to review the record, the judge's exceptions, the Commission's response, and impose the sanction recommended by the Commission, dismiss the proceeding, or remand the matter as we specify. *See* Md. Rule 18-408. However, "we have no appellate jurisdiction to review a judge's exceptions to the Commission's determination to issue [sanction] after public charges and a contested hearing," unless the case is referred by the Commission. *Matter of White*, 458 Md. 60, 67–68, 181 A.3d 750, 754 (2018).

We explained this Court's limited jurisdictional reach in *Matter of White*, 451 Md. 630, 155 A.3d 463 (2017) ("*White I*"), and again in *White*, 458 Md. 60, 181 A.3d 750 (2018) ("*White II*"). Both *White I* and *White II* involved the same underlying factual basis for judicial misconduct stemming from Judge White's actions presiding over *Louise V. Joyner v. Veolia Transportation Servs. Inc., et al.* Case No. 24C14000589 (Baltimore City Circuit Court). Following an evidentiary hearing, the Commission ruled that Judge White committed sanctionable conduct by failing to conduct herself in a way that "promotes public confidence in the impartiality of the judiciary[]" and for exhibiting bias. *White I*, 451 Md. at 644, 155 A.3d at 471. The Commission determined that a public reprimand was the appropriate sanction. *Id.* at 644–45, 155 A.3d at 471. Judge White filed an "Appeal and, in the Alternative, Petition for Writ of Certiorari" with this Court, where she sought review of "(1) whether the Commission had denied her procedural due process; and (2) whether the Commission had erred in finding sanctionable conduct and reprimanding her." *Id.* at 645, 155 A.3d at 471. We concluded that this Court did not have jurisdiction over Judge White's appeal because the Constitution and the Maryland Rules provide that for

this Court to conduct a review, the Commission must refer the matter by filing the record of its proceeding with this Court. *Id.* at 646, 155 A.3d at 472. We reiterated the conclusion in *White II*, where in reviewing Judge White's writ of mandamus,[8] we opined regarding the proper remedy for Judge White's claims. We do not confront such jurisdictional issues in the case at bar. Unlike in *White I* and *White II*, the Commission referred this matter to the Court for "other appropriate discipline."

The Commission must find the evidence to be clear and convincing in order to find sanctionable conduct. Maryland Rule 18-407(j) states:

> (j) **Commission Findings and Action**. If the Commission finds by clear and convincing evidence that the judge has a disability or has committed sanctionable conduct, it shall either issue a public reprimand for the sanctionable conduct or refer the matter to the Court of Appeals pursuant to section (k) of this Rule. Otherwise, the Commission shall dismiss the charges filed by the Investigative Counsel and terminate the proceeding.

The Commission's function, and the proceedings before it, are not akin to civil or criminal penalty proceedings. *See Diener*, 268 Md. at 670, 304 A.2d at 594. Rather, "they are merely an inquiry into the conduct of a judicial officer the aim of which is the maintenance of the honor and dignity of the judiciary and the proper administration[.] *Id.* However, calling a judge's conduct into question is a serious undertaking, with significant

---

[8] A writ of mandamus is a "remedy that is generally used to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which the party applying for the writ has a clear legal right." *Falls Road Community Ass'n, Inc. v. Baltimore County*, 437 Md. 115, 139, 85 A.3d 185, 199 (2014) (citations and quotations omitted).

consequences. The standard of clear and convincing evidence, which is less than proof beyond a reasonable doubt, but higher than a preponderance of the evidence, adequately reflects the ramifications of these particular proceedings.

## DISCUSSION

The Rules governing judicial integrity and the avoidance of impropriety provide in Rule 18-101.1 that "[a] judge shall comply with the law, including this Code of Judicial Conduct." Rule 18-102.5(a) provides that "[a] judge shall perform judicial and administrative duties competently, diligently, promptly, and without favoritism or nepotism." The Commission found that Judge Reese violated Maryland Rules 18-101.1 and 18-102.5(a) by failing to diligently and competently perform her duties as a judge during a peace order hearing. Missing from the Commission's reasoning is any statement of what *specific* behavior or conduct lacked competence, diligence, or promptness in violation of Maryland Rule 18-101.1 or 18-102.5(a). All that the Commission expressed is that Judge Reese "did not exhibit the thoroughness or diligence necessary to render any decision…."

In its Complaint, the Women's Law Center, who was not a party to the proceedings before Judge Reese, highlights that the entire hearing in the peace order matter lasted only three minutes. The Commission similarly points out that "[t]he exchange between the minor child and the Respondent lasted nineteen (19) seconds. The entire hearing lasted less than three (3) minutes." As is evident from Judge Reese's interaction with Ms. Hiltz, identified *supra*, the hearing was admittedly brief. The Women's Law Center avers that

21

"if Judge Reese had a proper understanding of the dynamics involved in a violent relationship, she would have asked more broadly about violence…." However, this assertion improperly frames the context and burden of a petition for a temporary peace order and the role of a judge in that process.

For a peace order to be granted, there must be reasonable grounds to believe that abuse has occurred and that there is likely to be a future instance of abuse. At the end of the peace order hearing, Judge Reese identified what the governing statute, Cts. & Jud. Proc. § 3-1504(a)(1), required her to find in order to issue a peace order. Judge Reese explained:

> I have to be able to find two things. One, is that one of the nine statutory forms of abuse have occurred. And, number two, he's likely to commit the purported act against her in the future. And I don't have any indication from his past behavior that anything like this is likely to occur again in the future. So I'm not going to enter the order today.

Judge Reese denied the protective order on the grounds that there was no evidence that Mr. Lecuyer was likely to abuse Ms. Hiltz in the future.

Judge Reese concluded that, based upon the facts presented, Ms. Hiltz did not demonstrate that abuse was likely to occur in the future. Before this Court, Judge Reese argues that this was a correct application of Cts. & Jud. Proc. § 3-1504, to the facts presented. Judge Reese's proposes that this assertion was confirmed when the Circuit Court for Carroll County dismissed Ms. Hiltz's appeal. When seeking a petition for a temporary peace order, a judge must find "reasonable grounds to believe that the respondent has committed, and is likely to commit in the future an act…against the

22

petitioner….” Cts. & Jud. Proc. § 3-1504.  The party bringing an action in court carries the burden to establish the elements of a claim.

Although the Commission and the Women's Law Center have taken the position that Judge Reese committed sanctionable conduct because she did not, in their estimation, undertake a more thorough approach in developing the factual scenario in the peace order matter, we conclude otherwise.  Judge Reese's ruling reflects that she appreciated the factual circumstances that were presented to her and applied the law to the facts in a reasonable fashion, thereby complying with Rule 18-101.1.  Further, Judge Reese also complied with Rule 18-102.5(a) as reflected by her performance of her judicial duties that belies any rational finding of a lack of competence or diligence on her part.

A judge must be able to exercise the appropriate discretion that reflects an appreciation of the facts presented, an understanding of the law that applies, and a reasonable conclusion based upon an analysis of the law's application to those facts.  Judge Reese carefully considered the testimony of seventeen year old Ms. Hiltz, and her grandmother, Ms. Stein, both of which provided the factual predicate for the petition for a peace order against Mr. Lecuyer, the ex-boyfriend of Ms. Hiltz.  After considering the testimony and evidence presented, and ascertaining through questioning that similar conduct had not occurred previously, Judge Reese found insufficient evidence that the abuse was likely to occur in the future, and denied the petition.  Reasonable minds could differ on whether the petition for a peace order should have been granted.  However, if Judge Reese erred in her ultimate decision, appreciation of the factual circumstances and

23

the applicable law, such error does not constitute sanctionable conduct. No applicable Maryland Rules, including Rules 18-101.1 and 18.102.5(a), require a specific measurement of time in order for a judge to determine whether they possess enough information to render a decision, nor does any other rule or statute require a certain number of inquiries prior to rendering a decision. Conduct should not lie within a rigid and finite formula that requires a limited number of questions to be posed, or required as part of the reasonable exercise of judicial discretion.

## Sanctionable Conduct

In determining the existence of sanctionable conduct, the Commission is limited to the factors enumerated in Rule 18-401(j). The first, "misconduct in office," is not present here, as the chief complaint against Judge Reese is the brevity with which she conducted a protective order proceeding. It is not alleged that Judge Reese conducted herself in any manner other than too quickly.

The Commission failed to establish that the second factor, "the persistent failure by a judge to perform the duties of the judge's office," was at issue relative to Judge Reese's conduct. Specifically, the Commission reviewed two proceedings over which Judge Reese presided, but ultimately focused on Judge Reese's conduct in just one of those proceedings. Even if we were to assume that misconduct did in fact occur, we are not prepared to conclude that one instance of misconduct can constitute a *persistent* failure by a judge to perform her duties.

24

The Commission also failed to establish that Judge Reese committed "conduct prejudicial to the proper administration of justice," the third factor under Rule 18-401(j). Specifically, the Commission has failed to indicate how Judge Reese's conduct was prejudicial to the petitioners, or the community, as a whole.

To determine the parameters of "sanctionable conduct," we review the Commission's findings in light of the language of the Rule and its Commentary. As we have explained, the Commission would have had to conclude that Judge Reese's conduct constituted "misconduct in office, the persistent failure by a judge to perform the duties of the judge's office, or conduct prejudicial to the proper administration of justice." Md. Rule 18-401. Instead, we have before us an instance where Judge Reese inquired about the factual circumstances, and reasoned that Ms. Hiltz was, unfortunately, not entitled to the relief she requested. Analyzing the facts presented, applying the relevant law, and issuing a legally sound decision is clearly compliant "with the law, including this Code of Judicial Conduct[]" as required by Rule 18-101.1, and is a performance of judicial duties "competently, diligently, promptly, and without favoritism or nepotism[,]" as required in Rule 18-102.5(a). We hasten to add that even if Judge Reese erred in her decision, such error does not establish misconduct. As the Rules Committee Note for Rule 18-401 indicates, "[s]anctionable conduct does not include a judge's simply making wrong decisions—even very wrong decision—in particular cases."

To be sure, "disposition of cases for reasons other than an honest appraisal of the facts and the law, as disclosed by the evidence presented, will amount to conduct

25

prejudicial to the administration of justice[.]" *Diener*, 268 Md. at 671, 304 A.2d at 594. In the instant case, Judge Reese listened to all of the evidence presented and made a decision. Reasonable judicial minds could differ on whether the requested remedy should have been granted. An equally reasonable interpretation of the facts presented could have concluded that Ms. Hiltz was assaulted, and as a protective measure, she should have received a temporary peace order. A disagreement over whether to grant the requested remedy, however, has no bearing on our review of whether Judge Reese committed sanctionable conduct, pursuant to Rule 18-401(j). As indicated *supra*, an assessment of the relevant law and an application to the facts, simply does not amount to "sanctionable conduct."

This Court has explained in one instance that where a judge's demeanor and comments constitute a pattern of inappropriate behavior, that conduct can be subject to sanction. *In re Lamdin*, 404 Md. 631, 650, 948 A.2d 54, 65 (2008). In *Lamdin*, we concluded that the judge's comments were violations of the former Code of Judicial Conduct when the judge repeatedly made comments in an undignified, discourteous, and disparaging way, where there were at least thirteen instances named in the complaint. *See id.* at 650, 948 A.2d at 64. Unlike the findings issued here, the Commission acting in *Lamdin* expressly found that the comments were "undignified, discourteous, and disparaging[,]" and provided examples about how Judge Lamdin defended and justified his inappropriate statements. *Id.* at 644, 948 A.2d at 62. In the case at bar, the Commission has not identified how it has measured Judge Reese's judicial demeanor. The Commission

26

simply concluded that "the imposition of a public reprimand is insufficient to address the misconduct by Judge Reese or restore the public's trust that the judge will not repeat these behaviors in the future." Whether the "behaviors" referenced by the Commission refer to Judge Reese's brevity during the proceedings at issue, is not clear. But brevity in judicial proceedings, without any refusal to consider evidence or argument, hardly seems grounds for misconduct.

Judge Reese excepts to the limitations placed on the witnesses she presented. We need not decide in this case whether the Commission abused its discretion by excluding expert testimony. Per Maryland Rule 5-702, [9] the proffered expert testimony certainly may have been of assistance to the Commission as a whole. Our ultimate conclusion, however, is that, based upon the evidence presented, Judge Reese did not commit sanctionable conduct; thus, we need not, and do not, decide in this case whether the evidence would have assisted the trier of fact.

---

[9] *See* Maryland Rule 5-702 providing:
Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

27

**CONCLUSION**

A proper exercise of discretion involves considering the particular circumstances and exercising sound judgment. *101 Geneva LLC v. Wynn*, 435 Md. 233, 241, 77 A.3d 1064, 1069 (2013). Although reasonable minds could differ regarding the merits of Judge Reese's decisions in the cases before her, those decisions were rooted in consideration of the law and the factual circumstances. In this proceeding, we examine whether Judge Reese's actions constituted sanctionable conduct under our rules and the circumstances presented. Our review of the record persuades us that they did not.

Maryland Commission on Judicial Disabilities
Case Nos. CJD 2015-132, CJD 2015-133, and CJD
2015-134

Argued: March 6, 2018

IN THE COURT OF APPEALS

OF MARYLAND

JD Docket No. 2

September Term, 2017

_____

IN THE MATTER OF THE HONORABLE
MARY C. REESE, JUDGE OF THE
DISTRICT COURT OF MARYLAND FOR
HOWARD COUNTY, TENTH JUDICIAL
CIRCUIT

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Concurring Opinion by Watts, J.

_____

Filed: July 31, 2018

Respectfully, I concur. I agree with the Majority that the case should have been dismissed with prejudice, but write separately to set forth my views. In this case, the Maryland Commission on Judicial Disabilities ("the Commission") found that the Honorable Mary C. Reese violated Maryland Rules 18-101.1 and 18-102.5(a) by failing to diligently and competently perform her duties as a judge during an adult peace order hearing.[1] Specifically, the Commission found that Judge Reese violated Maryland Rules 18-101 and 18-102.5(a), because, during a peace order hearing, Judge Reese asked three questions of the petitioner; the interaction took nineteen seconds; and the entire peace order hearing occurred in three minutes. This is the sole rationale given by the Commission in its findings for its decision. Against this backdrop, I agree with the Majority that Judge Reese's conduct did not rise to the level of violating Maryland Rules 18-101.1 and 18-102.5(a).

Maryland Rule 18-101.1 states: "A judge shall comply with the law, including this Code of Judicial Conduct." Maryland Rule 18-102.5(a) provides: "A judge shall perform judicial and administrative duties competently, diligently, promptly, and without favoritism or nepotism." Aside from the circumstance that the Commission provides no

---

[1]An adult peace order may be sought through a petition under Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol.) ("CJ") § 3-1503 to protect the petitioner from future contact and abuse from the individual against whom the order is sought ("the respondent"). Upon the filing of such a petition, a hearing on the petition is conducted, "whether ex parte or otherwise," to determine whether "there are reasonable grounds to believe that the respondent has committed, and is likely to commit in the future, an act specified in [CJ] § 3-1503(a) [] against the petitioner[.]" CJ § 3-1504(a)(1). If the judge concludes the requirements are met, "the judge may issue a temporary peace order to protect the petitioner." Id.

explanation for its conclusion, Judge Reese's ruling at the end of the peace order hearing undermines any conclusion that she did not perform her duties competently and diligently. At the end of the peace order hearing, Judge Reese identified what the governing statute, Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol.) ("CJ") § 3-1504(a)(1), required her to find to issue a peace order, and determined that the evidence did not satisfy the applicable standard. Specifically, Judge Reese ruled as follows:

> I have to be able to find two things. One, is that one of the nine statutory forms of abuse have occurred. And number two, he's likely to commit the purported act against her in the future.
>
> And I don't have any indication from his past behavior that anything like this is likely to occur again in the future.
>
> So I'm not going to enter the order today. If anything were to occur you can go to the commissioner's office if the court is not open. Or you can come back to the courthouse to file for relief. Okay?

Judge Reese's ruling demonstrates that she was well aware of the law governing the issuance of a peace order, and that she applied the law to the facts of the case. With the record displaying this level of precision in ruling, it is not possible to conclude that Judge Reese did not perform competently.

Diligence is defined as "[t]he attention and care required from a person in a given situation[.]" *Diligence*, Black's Law Dictionary (10th ed. 2014). Again, other than determining that the peace order hearing was brief, the Commission provided no explanation or analysis of its determination that Judge Reese acted without diligence. The Commission simply concluded: "[Judge Reese] did not demonstrate the thoroughness, competence[,] and diligence necessary to complete her judicial responsibilities." The

record reflects that Judge Reese asked the questions that she thought necessary, and made a decision based on the information that she received. There is no statute, Maryland Rule, or case that requires that a judge ask a specific number of questions—or, indeed, any questions at all—at a peace order hearing.

A judge must have the autonomy to determine when he or she believes that enough information has been developed to make a decision under the applicable law. That is exactly what occurred in this case. During the hearing, the petitioner's grandmother advised Judge Reese that: the petitioner and her boyfriend had broken up approximately two weeks earlier; the boyfriend had tracked the petitioner to a friend's residence "by telephone"; and, as a result, the petitioner had black eyes. The record demonstrates that Judge Reese questioned the petitioner to gain information as to whether the incident was likely to recur. The petitioner responded that no similar incidents had occurred before, and that she had blocked her boyfriend on her phone. Based on this information, it appears that Judge Reese concluded that the boyfriend would no longer be able to either contact the petitioner or trace her whereabouts through her phone. Judge Reese may have been incorrect in this assessment, but that does not provide a basis for finding a lack of diligence or competence. In sum, Judge Reese questioned the petitioner, gathered information, and determined that there was no basis on which to find that the issuance of a peace order would have been appropriate under the statute.

To find that Judge Reese's conduct violated Maryland Rule 18-102.5(a) based only on the brevity of the hearing would intrude on a judge's ability to determine when or at what point there is available sufficient information for the judge to rule on a specific issue.

Neither the Commission nor this Court should dictate that a judge must ask a requisite number of questions or spend a designated period of time in evaluating motions or objections, or ruling on any matter before the judge. It is inherent in the judicial decision-making process that a judge must have the freedom to determine when the judge has sufficient information to rule—without the judge being subject to a disciplinary proceeding alleging a lack of diligence or competence. To find sanctionable conduct in this case would result in any judge, who asked few questions or perhaps even issued an incomplete ruling, being subject to the disciplinary process for an alleged lack of diligence or competence.

Moreover, I would find that the Commission's preclusion of expert testimony was an abuse of discretion. See Md. R. 18-407(i)(5) ("The hearing shall be conducted in accordance with the rules of evidence in Title 5 of these rules."); but see In re White, 458 Md. 60, 98-99, 181 A.3d 750, 772 (2018) ("[E]videntiary rulings are traditionally within the discretion of the administrative body, and we will only find error when such a ruling offends basic rules of fairness." (Citation omitted)). From my perspective, the abuse of discretion occurred on two levels—the process by which the experts were excluded, and the merits. The record reflects that the Commission's Acting Chair considered the issue of the admissibility of expert testimony at a prehearing conference.[2] The prehearing conference was not conducted on the record, so there is no transcript available. The sole documentation of the ruling is one sentence in an order that was signed by the Acting Chair of the Commission stating: "Judge Reese will not be permitted to offer any expert witnesses

---

[2]The record indicates that the Honorable Michael W. Reed was also present at the prehearing conference, though he did not sign the Prehearing Conference Order.

in this matter." The Commission as a whole did not consider the admissibility of expert testimony. Rather, the issue was determined by the Acting Chair, who is a District Court judge. In coming to this conclusion, the Acting Chair was required to determine whether the "testimony [would] assist the trier of fact to understand the evidence or to determine a fact in issue." Md. R. 5-702. Although the Acting Chair may have understood peace order proceedings and the standards that are attendant to them, the proffered expert testimony may have been of assistance to the Commission as a whole. From my perspective, it is critical that the Commission be considered the trier of fact when the admissibility of expert witness testimony is determined under Maryland Rule 5-702 in judicial disciplinary proceedings, *i.e.*, it must be determined whether expert witness testimony would assist the trier of fact, meaning the Commission as a whole. This Court has recently ordered the Standing Committee on Rules of Practice and Procedure ("the Rules Committee") to revisit amendments to the Maryland Rules concerning judicial discipline. In my opinion, the Rules Committee should review the manner in which the Commission handles motions *in limine* with respect to expert witness testimony, and a Maryland Rule should be developed to govern the procedure for reviewing such motions.

Currently, under the Maryland Rules, the Chair of the Commission is provided with enumerated powers. These enumerated powers are relatively few, and do not specifically provide for the authority to make unilateral decisions on evidentiary matters, such as the exclusion of expert witnesses. See Md. R. 18-403(c); 18-404(e)(2), (j)(2), (j)(3), (k); 18-

- 5 -

405(b)(1); 18-407(g)(3), (g)(4), (i)(7), (k)(4).[3]  By rendering a unilateral decision, in a context that necessarily required an inquiry of whether the Commission as a whole would find the proffered testimony helpful, the Chair may have been susceptible to applying a view concerning the propriety of the proposed expert testimony that might not have taken into account the varying backgrounds of the members of the Commission.[4]

Also, I take issue with the manner in which the ruling was rendered—a single sentence without any explanation of the ruling.  Logic dictates that rulings on important matters, such as the exclusion of expert witnesses, should be made in a manner that develops a record from which meaningful review may be had.  The Commission asserts that the Acting Chair's decision should be presumed correct, because, like a trial judge, the Acting Chair should be "presumed to know the law and apply it properly." Aventis Pasteur, Inc. v. Skevofilax, 396 Md. 405, 426, 914 A.2d 113, 125 (2007) (cleaned up).  This presumption exists, however, to promote efficiency through providing judges with latitude to rule without explaining every decision when support may be found in the record. See id. at 426, 914 A.2d at 125-26.  Here, there is no record or explanation of the Acting Chair's

---

[3]Maryland Rule 18-407(g)(3) provides the Chair with the authority to make unilateral decisions on the scope of discovery; however, this authority does not expressly extend to evidentiary determinations, such as the instant ruling on a motion *in limine* to preclude expert witness testimony.

[4]My recommendation to the Rules Committee is not that the Commission as a whole be required to rule on motions *in limine* regarding the preclusion of expert testimony but rather that, among matters, regardless of how the authority for deciding such motions *in limine* is allocated, it be made clear that, under Maryland Rule 5-702, the Commission as a whole is considered the trier of fact.  In other words, the admissibility of expert witness testimony must be considered in terms of whether the expert witness testimony would be of assistance to the Commission as a whole.

decision for this Court to review; and, the principle that a trial court is presumed to know the law is not inherently applicable to the rulings of the Commission.

At the disciplinary hearing, Judge Reese's counsel proffered that there were three potential expert witnesses who would have testified, among other things, that: (1) Judge Reese had met the applicable standard of care under the Code of Judicial Conduct; (2) Judge Reese's questions to the petitioner were proper, and "it was not Judge Reese's role to attempt to prove the petitioner's case for her"; and (3) the duration of the hearing was not in and of itself improper. As to the merits of expert testimony, in my view, Judge Reese's counsel's proffer satisfied the requirement of Maryland Rule 5-702 for the admission of expert testimony. The testimony would have been helpful to the Commission, and the experts possessed a sufficient factual basis for the testimony and were qualified to testify. Each of the proffered expert witnesses—the Honorable Joseph F. Murphy, Jr., the Honorable James N. Vaughan, and the Honorable Frederic N. Smalkin—have had lengthy, respected careers in the Maryland Judiciary, or, in Chief Judge Smalkin's case, the United States District Court for the District of Maryland. It is beyond dispute that the proposed experts were qualified, and possessed sufficient knowledge of the issues about which they intended to testify (judicial ethics and substantive Maryland law) to meet the threshold required of expert witnesses. And, in my view, their testimony clearly would have been helpful to the Commission. See Md. R. 5-702.

I would acknowledge that not all proceedings before the Commission will present circumstances for which the testimony of expert witness will be helpful. See id. From my perspective, examples of situations, among others, for which expert testimony may likely

not be helpful or necessary are situations in which a judge is charged with misconduct that is related to demeanor or lack of courtesy. See Md. R. 18-102.8(b) ("A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, attorneys, court staff, court officials, and others with whom the judge deals in an official capacity[.]"). The issue of whether a judge has been patient, dignified, and courteous is not an issue that necessarily requires an expert to render an opinion as to a particular standard of care and whether that standard has been violated. By contrast, this case included a charge for alleged lack of diligence and competence under Maryland Rule 18-102.5(a), which required inquiry into the role and a proposed standard of care for a judge in applying a specific body of law to facts and conducting a hearing where a party seeking relief was self-represented and the party against whom the relief was sought was not present.

Investigative Counsel and Judge Reese disputed whether an expert should be able to testify about a standard of care for judges and whether a judge may or may not have violated a certain standard of care. The Maryland Circuit Judges Associations, amicus, and the Commission direct this Court to judicial misconduct cases from other jurisdictions that pertain to the standard of care. This jurisprudence is complex and factually distinct from the proceedings against Judge Reese.

The standard of care jurisprudence from other jurisdictions brought to this Court's attention by the Commission and amicus is primarily concerned with when a judge's legal error may be considered judicial misconduct. See In re DiLeo, 83 A.3d 11, 14 (N.J. 2014); see also In re Benoit, 487 A.2d 1158, 1162-63 (Me. 1985). In DiLeo, 83 A.3d at 17, a trial court judge: (1) improperly found that two defendants had waived their right to counsel;

(2) failed to engage in the required colloquy prior to allowing the defendants to represent themselves; (3) conducted a trial against the defendants in the absence of a prosecutor, examining witnesses personally; and (4) imposed improper sentences. The convictions were reversed on appeal. See id. at 14. Citing the reversal and the deprivation of the defendant's rights that resulted from the trial judge's legal errors, the defendant's counsel filed a complaint with New Jersey's Advisory Committee on Judicial Conduct ("the Committee").[5] See DiLeo, 83 A.3d at 18. Subsequently, the Committee issued a presentment to the New Jersey Supreme Court, finding that there was clear and convincing evidence that, aside from the errors in sentencing, the legal errors constituted judicial misconduct. See id. at 19.

DiLeo, id., presented the New Jersey Supreme Court with an issue of first impression: "[U]nder what circumstances may a judge's legal error constitute grounds for a finding of judicial misconduct[?]" In the context of answering this question, the New Jersey Supreme Court evaluated a body of jurisprudence on the subject. The New Jersey Supreme Court noted that, in Benoit, 487 A.2d at 1163, the Supreme Judicial Court of Maine "adopted an objective standard" of "whether a 'reasonably prudent and competent judge' considers the conduct 'obviously and seriously wrong in all circumstances.'" DiLeo, 83 A.3d at 20. However, after analyzing cases from a number of jurisdictions,[6] the New Jersey Supreme Court determined that to constitute judicial misconduct, a legal error

_____

[5]The Committee functions in a similar fashion to the Commission.

[6]The New Jersey Supreme Court reviewed the approaches to this issue in Alabama, Alaska, Arkansas, California, Iowa, Kentucky, Louisiana, Maine, Ohio, Oklahoma, Rhode Island, and Texas.

must be: (1) "made contrary to clear and determined law about which there is no confusion or question as to its interpretation"; and (2) "egregious, made in bad faith, or made as part of a pattern or practice of legal error." Id. at 27 (citation omitted).

DiLeo involves a discussion of a finding of judicial misconduct based on a misapplication of the law, *i.e.*, conduct involving legal error. Here, the Commission is not attempting to sanction Judge Reese for an alleged misapplication of the law. Moreover, the Maryland Code of Judicial Conduct specifically provides that good-faith errors of fact or law "do not violate the rule requiring impartiality and fairness." Md. R. 18-102.2 cmt. 3. Accordingly, DiLeo and cases from other jurisdictions concerning the standard of care for judicial misconduct where a judge commits legal error are not applicable.

Here, with no explanation, the Commission found that Judge Reese violated Maryland Rule 18-102.5(a), which requires a judge to "perform judicial and administrative duties competently, diligently, promptly, and without favoritism or nepotism[,]" apparently for not asking enough questions during a peace order hearing. This case charted new ground—a judge was found to have committed sanctionable conduct for asking too few questions in a case before the judge. No reasonable mind could have concluded that expert testimony about the role of a judge in a peace order hearing, or what the standard should be for the decision-making process in such a hearing, would not have assisted the Commission as a whole in understanding the evidence in the case. See Md. R. 5-702. In sum, I would hold that Judge Reese did not engage in sanctionable conduct, *i.e.*, that Judge Reese did not violate Maryland Rules 18-101.1 and 18-102.5(a), and that the Commission's

exclusion of Judge Reese's proposed expert witnesses was an abuse of discretion.[7]

For the above reasons, respectfully, I concur.

---

[7]As to the sanction, the Commission recommended that Judge Reese receive mentoring and training. Currently, under the Maryland Rules, where the Commission finds by clear and convincing evidence that a judge has committed sanctionable conduct, the Commission shall either issue a public remand for the sanctionable conduct or refer the matter to the Court of Appeals. See Md. R. 18-407(j). Otherwise, the Commission shall dismiss the charges and terminate the proceeding. See id. I would encourage the Rules Committee to review Maryland Rule 18-407 to attempt to give the Commission greater latitude to resolve cases where charges are pending, or sanctionable conduct is found, without forwarding the matter to this Court. The outcome that the Commission recommended in this case—mentoring and training—is arguably not a sanction, and is the type of outcome that the Commission should have the authority to achieve without sending the matter to this Court.